[929 NE2d 366, 903 NYS2d 304]

CITY OF NEW YORK et al., Plaintiffs, v THOMAS A. MAUL, as Commissioner of the New York State Office of Mental Retardation and Developmental Disabilities, Defendant. L.J. et al., on Behalf of Themselves and Others Similarly Situated, Intervenors-Respondents, v JOHN B. MATTINGLY, as Commissioner, New York City Administration for Children's Services, Appellant, et al., Defendant.

Argued March 22, 2010; decided May 6, 2010

## POINTS OF COUNSEL

*Michael A. Cardozo, Corporation Counsel,* New York City (*Drake A. Colley, Edward F.X. Hart, Alan H. Kleinman* and *Joshua P. Rubin* of counsel), for appellant. I. The class should be decertified because the Administration for Children's Services must treat each case individually and there is no common question that can be adjudicated. (*Ackerman v Price Waterhouse,* 252 AD2d 179; *Matter of Colt Indus. Shareholder Litig.,* 77 NY2d 185; *Gaynor v Rockefeller,* 15 NY2d 120; *Rife v Barnes Firm, P.C.,* 48 AD3d 1228; *Mitchell v Barrios-Paoli,* 253 AD2d 281; *Friar v Vanguard Holding Corp.,* 78 AD2d 83; *General Telephone Co. of Southwest v Falcon,* 457 US 147; *Solomon v Bell Atl. Corp.,* 9 AD3d 49; *Hazelhurst v Brita Prods. Co.,* 295 AD2d 240; *Geiger v American Tobacco Co.,* 277 AD2d 420.) II. The Appellate Division erred in failing to consider Family Court proceedings. (*Jamie B. v Hernandez,* 274 AD2d 335; *Mosher-Simons v County of Allegany,* 99 NY2d 214; *Sean M. v City of New York,* 20 AD3d 146; *O'Brien v City of Syracuse,* 54 NY2d 353; *Matter of Reilly v Reid,* 45 NY2d 24; *Parker v Blauvelt Volunteer Fire Co.,* 93 NY2d 343; *Ryan v New York Tel. Co.,* 62 NY2d 494; *Duvall v County of Kitsap,* 260 F3d 1124.) III. The court below erred in allowing intervenors' moot prospective claims to proceed. (*Matter of Hearst Corp. v Clyne,* 50 NY2d 707; *Mental Hygiene Legal Servs. v Ford,* 92 NY2d 500; *Community Bd. 7 of Borough of Manhattan v Schaffer,* 84 NY2d 148; *Matter of Chenier v Richard W.,* 82 NY2d 830; *People ex rel. Maxian v Brown,* 164 AD2d 56.)

*Patterson Belknap Webb & Tyler LLP,* New York City (*Catherine A. Williams* and *Lisa E. Cleary* of counsel), *New York Lawyers for Public Interest* (*Roberta Mueller* of counsel) and *Lawyers for Children, Inc.* (*Karen Freedman* and *Betsy Kramer* of counsel) for respondents. I. The Appellate Division correctly agreed with the Supreme Court that common questions predominate here. (*Friar v Vanguard Holding Corp.,* 78 AD2d 83; *Matter of Lamboy v Gross,* 129 Misc 2d 564, 126 AD2d 265; *Brad H. v City of New York,* 185 Misc 2d 420, 276 AD2d 440; *Baby Neal for & by Kanter v Casey,* 43 F3d 48; *Marisol A. v Giuliani,* 126 F3d 372; *Brandon v Chefetz,* 106 AD2d 162; *J.B. ex rel. Hart v Valdez,* 186 F3d 1280; *Darns v Sabol,* 165 Misc 2d 77, *affd sub nom. Hernandez v Hammons,* 239 AD2d 192;

*Mitchell v Barrios-Paoli,* 253 AD2d 281; *Gaynor v Rockefeller,* 15 NY2d 120.) II. The courts below did not abuse their discretion in finding that the class claims are justiciable and should be heard in the Supreme Court. *(Baby Neal for & by Kanter v Casey,* 43 F3d 48; *Jiggetts v Grinker,* 75 NY2d 411; *Klostermann v Cuomo,* 61 NY2d 525; *Jamie B. v Hernandez,* 182 Misc 2d 954, 274 AD2d 335; *Matter of Brian L. v Administration for Children's Servs.,* 51 AD3d 488; *People United for Children, Inc. v City of New York,* 108 F Supp 2d 275; *Mosher-Simons v County of Allegany,* 99 NY2d 214; *Sean M. v City of New York,* 20 AD3d 146; *Friar v Vanguard Holding Corp.,* 78 AD2d 83; *Matter of Lamboy v Gross,* 129 Misc 2d 564.) III. The Appellate Division correctly affirmed the denial of summary judgment on mootness grounds. *(Matter of M.B.,* 6 NY3d 437; *Matter of Jones v Berman,* 37 NY2d 42; *Matter of Ronald W.,* 25 AD3d 4; *Martin A. v Gross,* 153 AD2d 812; *McCain v Koch,* 117 AD2d 198, 70 NY2d 109; *Matter of Hearst Corp. v Clyne,* 50 NY2d 707; *Mental Hygiene Legal Servs. v Ford,* 92 NY2d 500.)

*Bryan Cave LLP,* New York City (*Eric Rieder, R. Joshua Bliss, Adam Rosen* and *Megan Awerdick* of counsel), for Advocates for Children of New York and others, amici curiae. I. The class action is an indispensable device for remedying the kind of systemic government deficiencies alleged here. *(Armstrong v Davis,* 275 F3d 849; *Friar v Vanguard Holding Corp.,* 78 AD2d 83; *Matter of Colt Indus. Shareholder Litig.,* 77 NY2d 185; *Stern v Carter,* 82 AD2d 321; *Geiger v American Tobacco Co.,* 181 Misc 2d 875; *United States ex rel. Morgan v Sielaff,* 546 F2d 218; *Seittelman v Sabol,* 158 Misc 2d 498, 217 AD2d 523; *Zepeda v United States Immigration & Naturalization Serv.,* 753 F2d 719; *Bowers v National Coll. Athletic Assn.,* 118 F Supp 2d 494; *Matter of Brown v Wing,* 170 Misc 2d 554, 241 AD2d 956.) II. Courts consistently approve of the use of class actions for injunctive and declaratory relief from systemic deficiencies in similar cases. *(Baby Neal for & by Kanter v Casey,* 43 F3d 48; *Marisol A. v Giuliani,* 126 F3d 372; *Armstrong v Davis,* 275 F3d 849.) III. Claims seeking to enforce mandatory legal rights are justiciable. *(Klostermann v Cuomo,* 61 NY2d 525; *Figueroa v Market Training Inst.,* 167 AD2d 503; *Matter of Natural Resources Defense Council v New York City Dept. of Sanitation,* 83 NY2d 215; *Marisol A. v Giuliani,* 929 F Supp 662, 126 F3d 372; *Jiggetts v Grinker,* 75 NY2d 411; *McCain v Koch,* 70 NY2d 109; *Martin A. v Gross,* 153 AD2d 812.) IV. The claims of the class are not moot. *(Matter of M.B.,* 6 NY3d 437; *Mental Hygiene Legal Servs. v Ford,* 92 NY2d 500; *Matter of Lamboy v Gross,* 129 Misc 2d 564, 126 AD2d 265.)

*Gibson, Dunn & Crutcher LLP,* New York City (*Randy M. Mastro, Richard A. Bierschbach, Aaron Simowitz* and *Lauren Sager* of counsel), and *Legal Aid Society, Juvenile Rights Practice* (*Steven Banks, Tamara A. Steckler, Judith Waksberg, Nancy Rosenbloom* and *Karen Fisher Gutheil* of counsel) for Legal Aid Society of New York, amicus curiae. I. Family Court cannot remedy the Office of Mental Retardation and Developmental Disabilities and Administration for Children's Services failures. (*Matter of Johna M.S. v Russell E.S.,* 10 NY3d 364; *Matter of Brescia v Fitts,* 56 NY2d 132; *Parsippany Constr. Co., Inc. v CNA Ins. Co.,* 67 AD3d 658; *People United for Children, Inc. v City of New York,* 108 F Supp 2d 275; *Matter of Ronald W.,* 25 AD3d 4; *Matter of Lorie C.,* 49 NY2d 161; *Matter of James A.,* 50 AD3d 787; *Matter of Hasani B.,* 195 AD2d 404; *Matter of Enrique R.,* 126 AD2d 169.) II. The class action mechanism is necessary and appropriate. (*New York City Coalition to End Lead Poisoning v Giuliani,* 245 AD2d 49; *Tindell v Koch,* 164 AD2d 689; *Matter of Lamboy v Gross,* 126 AD2d 265; *Brad H. v City of New York,* 185 Misc 2d 420, 276 AD2d 440; *Varshavsky v Perales,* 202 AD2d 155; *Seittelman v Sabol,* 217 AD2d 523, 91 NY2d 618; *Bryant Ave. Tenants' Assn. v Koch,* 71 NY2d 856; *Robidoux v Celani,* 987 F2d 931; *County of Riverside v McLaughlin,* 500 US 44.)

*Stephen J. Acquario, General Counsel, New York State Association of Counties,* Albany (*Robert W. Gibbon* of counsel), for New York State Association of Counties, amicus curiae. Challenges regarding individual determinations of placement, when those placements are made based upon discrete individual details, should not be allowed by this Court to be brought in the form of a class action, when the true question to be determined is whether an abuse of discretion occurred in each solitary case. (*Matter of LaGuardia v Smith,* 288 NY 1; *Rapp v Carey,* 44 NY2d 157; *Cohen v State of New York,* 94 NY2d 1; *Matter of Small v Moss,* 279 NY 288; *Golden v Paterson,* 23 Misc 3d 641; *Matter of Lorie C.,* 49 NY2d 161; *New York City Hous. Auth. v Medlin,* 57 Misc 2d 145.)

## OPINION OF THE COURT

GRAFFEO, J.

We conclude that the Appellate Division did not abuse its discretion in affirming a Supreme Court order granting class action certification under CPLR article 9 to plaintiffs, a group of developmentally disabled children and young adults who are or

have been in New York City's foster care system. We therefore affirm the Appellate Division order.

I.

This appeal concerns the alleged failures of the New York City Administration for Children's Services (ACS) and the New York State Office of Mental Retardation and Developmental Disabilities (OMRDD) to fulfill their statutory and regulatory duties with respect to certain children in ACS's foster care system. ACS is a municipal agency that provides foster care placements and services to thousands of children in a broad array of settings. It is statutorily required to undertake permanency planning and ensure appropriate placements for each of these children, including those with developmental disabilities (*see* Social Services Law § 398).[1] OMRDD is a state agency responsible for "the development of comprehensive plans, programs, and services" for "persons with mental retardation and developmental disabilities" (Mental Hygiene Law § 13.07 [a]).

The City of New York, by ACS's Commissioner, originally commenced this action in 2004 on behalf of seven children in foster care against the Commissioner of OMRDD, alleging that OMRDD failed to properly place, treat or care for developmentally disabled children who were properly referred by ACS. The complaint seeks declaratory relief with respect to the subject children as well as for "all other mentally retarded and/or developmentally disabled persons properly referred by [ACS]." In its complaint, the City further asserts that OMRDD improperly refused to provide nonresidential services to foster children even though it provides such services to similarly-situated children who are not in the foster care system.[2]

In 2006, the scope of this litigation expanded when Supreme Court granted intervenor status to 11 additional plaintiffs. Each intervenor/plaintiff is developmentally disabled and is, or was a child in ACS's care, custody or guardianship. Plaintiffs'

1. The term "developmental disability" is defined in Mental Hygiene Law § 1.03 (22) and includes mental retardation, cerebral palsy, epilepsy, neurological impairment and autism.

2. ACS and OMRDD have a lengthy history of litigation concerning issues surrounding which agency bears the ultimate responsibility for providing and funding services to special needs children in ACS's care, custody or guardianship (*see Flowers v Webb*, 575 F Supp 1450 [ED NY 1983]; *City of New York v Webb*, Sup Ct, NY County, Nov. 12, 1986, Cotton, J., index No. 40313/86).

amended complaint sets forth six causes of action against ACS and OMRDD and seeks declaratory and injunctive relief based on both agencies' alleged violations of state and federal statutes and regulations.[3]

In general, plaintiffs claim that ACS and OMRDD failed to place them in the least restrictive settings that were appropriate for their needs. More particularly, plaintiffs contend that ACS lacks a consistent plan for identifying children who are in need of OMRDD's services and that ACS fails to adequately train its caseworkers to evaluate developmental disabilities. They allege that, when the need for OMRDD's services arises in a particular case, ACS fails to make necessary referrals to OMRDD or waits an inordinate amount of time before doing so, all to the detriment of the children requiring special services. Even when children are referred to OMRDD, plaintiffs claim that referral packets prepared by ACS are often incomplete, resulting in rejections by OMRDD of otherwise eligible children, causing additional delays in appropriate services. Finally, plaintiffs argue that these failures are especially harmful to older adolescents who are close to "aging out" of the foster care system because delayed referrals to OMRDD make it more difficult for that agency to find appropriate permanent placements for them.

As a result, plaintiffs submit that ACS practices allow developmentally disabled children to age out of the foster care system without adequate permanency planning. This is apparent in the profile of the plaintiffs—all but one of the young people were either approaching 21 years of age or were 21 or older when the complaint was filed.[4] Similarly, 10 of the plaintiffs allege that ACS's referral delays impeded their placements and receipt of services from OMRDD.

Regarding OMRDD, plaintiffs echo the City's allegations in the original complaint, including that OMRDD improperly

---

**3.** Specifically, plaintiffs contend that ACS violated title II of the Americans with Disabilities Act (ADA) of 1990 (42 USC § 12131 *et seq.*) and its implementing regulations; section 504 of the Rehabilitation Act of 1973 (29 USC § 794); and Social Services Law §§ 398, 409-d and 409-e. Six of the plaintiffs also seek an award of compensatory damages against ACS based on its alleged violation of section 504 of the Rehabilitation Act with "deliberate indifference." As to OMRDD, plaintiffs allege that agency violated title II of the ADA and its implementing regulations; section 504 of the Rehabilitation Act; and Mental Hygiene Law §§ 13.01 and 33.03.

**4.** Foster care may continue until an individual reaches 21 years of age (*see* Family Ct Act § 1087 [a]; Social Services Law § 398 [6] [h], [i]; § 398-a [1]).

refuses to provide nonresidential services to children in the care, custody or guardianship of ACS, even though it provides similar services to children outside the foster care system. They also claim that OMRDD categorically declines referrals from ACS unless a child's stated permanency planning goal is adult residential placement, and that OMRDD's waiting periods for appropriate placements are unreasonably long, sometimes lasting nine years. These delays necessarily have a detrimental impact because, while awaiting placement by OMRDD, ACS temporarily places some children and adolescents in unduly restrictive settings that are inappropriate to their needs.

Plaintiffs represent that there are at least 150 youngsters with developmental disabilities who are similarly injured by ACS's and OMRDD's failures to provide services that they are entitled to by law. Consequently, plaintiffs moved in Supreme Court for class certification. ACS opposed the motion and crossmoved for partial summary judgment dismissing plaintiffs' prospective claims as moot on the basis that eight plaintiffs had since been placed in appropriate OMRDD facilities and that the remaining three had been approved by OMRDD and were awaiting vacancies.

Supreme Court denied ACS's motion, granted plaintiffs' request and certified the class as follows:

> "Individuals with developmental disabilities who are in or have been in New York City Administration for Child[ren's] Services' (ACS's) care or custody and who, during their time in ACS's care or custody, have not received or did not receive services from ACS and the New York Office of Mental Retardation and Developmental Disabilities to which they were or are entitled."[5]

The Appellate Division, with one Justice dissenting, affirmed (59 AD3d 187 [1st Dept 2009]).[6] The Court held that plaintiffs' prospective claims could be addressed under an exception to the mootness doctrine and that plaintiffs had satisfied the requirements of CPLR article 9, warranting class certification. The Appellate Division subsequently granted leave to appeal to this

---

5. Supreme Court also rejected ACS's contention that class certification was improper under the government operations doctrine (*see Bryant Ave. Tenants' Assn. v Koch*, 71 NY2d 856, 859 [1988]). ACS does not pursue this argument on appeal and we therefore do not address it.

6. OMRDD did not join in ACS's appeal from Supreme Court's order certifying the class.

Court (2009 NY Slip Op 77287[U]) and certified the following question: "Was the order of this Court, which affirmed the order of the Supreme Court, properly made?"

## II.

■ At the outset, ACS submits that its motion for partial summary judgment should have been granted because plaintiffs' claims for declaratory and injunctive relief are now moot. We disagree.

As a general principle, courts are precluded "from considering questions which, although once live, have become moot by passage of time or change in circumstances" (*Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 714 [1980]). Typically, "an appeal will be considered moot unless the rights of the parties will be directly affected by the determination of the appeal and the interest of the parties is an immediate consequence of the judgment" (*id.*). Nevertheless, we have consistently applied an exception to the mootness doctrine, permitting judicial review, where the issues are substantial or novel, likely to recur and capable of evading review (*see id.* at 715; *see also Matter of M.B.*, 6 NY3d 437, 447 [2006]; *Mental Hygiene Legal Servs. v Ford*, 92 NY2d 500, 506 [1998]).

Here, ACS represents that since the time the complaint was filed, at least eight plaintiffs are now receiving services at suitable OMRDD facilities, and the other plaintiffs have been approved and are awaiting OMRDD placements. Even assuming that the claims of these plaintiffs pertaining to the waiting list are moot, we concur with the Appellate Division that an exception to mootness should be applied in this case. Plaintiffs raise substantial and novel questions as to whether ACS and OMRDD are fulfilling their statutory responsibilities. These issues are likely to recur and may evade review given the temporary duration of foster care, the aging out of potential plaintiffs and the fact that some placements tend to be transitory (*see Matter of Savastano v Prevost*, 66 NY2d 47, 48 n [1985], *rearg denied* 66 NY2d 1036 [1985] ["While all 25 patients who are the subject of the petition have by now been transferred to an OMRDD facility, we retain jurisdiction because of the substantial issues raised, the likelihood of repetition, and the fact that these issues may otherwise evade review"]). Concluding that the mootness exception is applicable, we next turn to the class certification issue.

## III.

ACS, supported by amicus New York State Association of Counties, contends that the courts below abused their discretion in allowing this case to proceed as a class action. In particular, ACS asserts that, contrary to the conclusions of Supreme Court and the Appellate Division, plaintiffs have failed to demonstrate, as required by CPLR 901 (a) (2), that common questions of fact or law predominate over issues that are specific to individual class members. ACS suggests that plaintiffs are seeking to litigate a claim of "systemic failure," a concept too broad to comply with the commonality prerequisite of CPLR 901 (a) (2). Plaintiffs, joined by various amici, including the Legal Aid Society of New York and Advocates for Children of New York, counter that the courts below did not abuse their discretion because plaintiffs identified at least four common issues that meet the statutory requirements.

CPLR 901 (a) sets forth five prerequisites to class certification:

"1. the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

"2. there are questions of law or fact common to the class which predominate over any questions affecting only individual members;

"3. the claims or defenses of the representative parties are typical of the claims or defenses of the class;

"4. the representative parties will fairly and adequately protect the interests of the class; and

"5. a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

These factors are commonly referred to as the requirements of numerosity, commonality, typicality, adequacy of representation and superiority. Only the commonality element is at issue on this appeal.

The Legislature adopted CPLR article 9 (§§ 901-909) in 1975 to replace CPLR 1005, the prior class action provision. The former class action statute, which remained virtually unchanged for more than a century, "had been judicially restricted over the years and was subject to inconsistent results" (*Sperry v Crompton Corp.*, 8 NY3d 204, 210 [2007]). In 1975, the Judicial

Conference proposed a new article 9, which was designed "to set up a flexible, functional scheme whereby class actions could qualify without the present undesirable and socially detrimental restrictions" (13th Ann Report of Jud Conf on CPLR, reprinted in 1975 McKinney's Session Laws of NY, at 1493). Courts have recognized that the criteria set forth in CPLR 901 (a) "should be broadly construed not only because of the general command for liberal construction of all CPLR sections (see CPLR 104), but also because it is apparent that the Legislature intended article 9 to be a liberal substitute for the narrow class action legislation which preceded it" (*Friar v Vanguard Holding Corp.*, 78 AD2d 83, 91 [2d Dept 1980]).

The determination of whether a lawsuit qualifies as a class action under the statutory criteria "ordinarily rests within the sound discretion of the trial court" (*Small v Lorillard Tobacco Co.*, 94 NY2d 43, 52 [1999]). The Appellate Division likewise "is vested with the same discretionary power and may exercise that power, even when there has been no abuse of discretion as a matter of law by the nisi prius court" (*id.* at 52-53; *see also Matter of State of New York v Ford Motor Co.*, 74 NY2d 495, 501 [1989]). Our standard of review, however, is far more limited. Where, as here, the Appellate Division affirms a Supreme Court order certifying a class, we may review only for an abuse of discretion as a matter of law.

In *Small*, for example, we held that the Appellate Division did not abuse its discretion in decertifying five separate classes— each containing at least one million members—relating to claims brought by smokers against cigarette manufacturers for damages based on defendants' alleged fraudulent deception about the addictive properties of cigarettes. On the issue of commonality, the Appellate Division found that individual questions would predominate because individualized proof of addiction was essential to support plaintiffs' General Business Law § 349 claim and, given the well-documented dangers of smoking, particularized inquiry into whether each class member was aware of this information would be necessary to resolve the General Business Law § 350 and common-law fraud claims. In affirming, we were "satisfied that the Appellate Division properly weighed the relevant statutory factors and correctly fulfilled its intermediate appellate court role and powers" (94 NY2d at 55).

In *Weinberg v Hertz Corp.* (69 NY2d 979 [1987]), plaintiffs commenced an action against an automobile rental company alleging three unfair and deceptive practices. Supreme Court

denied class certification but the Appellate Division reversed and certified the class. The Appellate Division rejected the rental company's contention that common questions did not predominate under CPLR 901 (a) (2), reasoning "[t]hat individuals who are members of the class might have been subjected to less than all of the conduct complained of is not a ground for denying class action" (116 AD2d 1, 6 [1st Dept 1986]). The Appellate Division further observed that CPLR 901 (a) (2) "clearly envisions authorization of class actions even where there are subsidiary questions of law or fact not common to the class" (*id.*). On appeal, we affirmed the certification order, concluding there was "no reason to disturb [its] inherently discretionary determination" (69 NY2d at 982). Hence, in both *Small* and *Weinberg*, we determined that the Appellate Division did not exceed its discretionary authority in resolving questions of class certification.[7]

New York courts have also found that "[f]ederal jurisprudence is helpful" in analyzing CPLR 901 issues (*Friar*, 78 AD2d at 96), because CPLR article 9 "has much in common with Federal rule 23" (*Matter of Colt Indus. Shareholder Litig.*, 77 NY2d 185, 194 [1991]), the federal class action provision. In *Baby Neal for & by Kanter v Casey* (43 F3d 48 [3d Cir 1994]), 16 children placed in the care of Philadelphia's Department of Human Services (DHS) brought an action against DHS based on its failure to provide a multitude of services to children in violation of numerous constitutional and statutory provisions. Plaintiffs sought declaratory and injunctive relief, and moved to represent a class of about 6,000 abused and neglected children that were known or should have been known to DHS. The District Court denied class certification, reasoning that the plaintiffs failed to satisfy Federal Rules of Civil Procedure rule 23 (a) (2)'s commonality requirement because not one of the

---

7. In fact, to date this Court has not found an abuse of discretion as a matter of law in the CPLR article 9 class certification context (*see e.g. Matter of 43rd St. Second Ave. Corp. v City of New York*, 83 NY2d 776, 778 [1994], *rearg denied* 83 NY2d 907 [1994] ["We find no abuse of discretion in the Appellate Division's determination that class certification is unwarranted in this case"]; *Bryant Ave. Tenants' Assn. v Koch*, 71 NY2d 856, 859 [1988] [stating that it could not be said "that it was an abuse of discretion as a matter of law to permit this class action to proceed against the governmental defendants"]; *Rivers v Katz*, 67 NY2d 485, 499 [1986], *rearg denied* 68 NY2d 808 [1986] ["Finally, we conclude that Special Term did not abuse its discretion in denying the motion for class action certification"]; *Caesar v Chemical Bank*, 66 NY2d 698, 701 [1985] ["Moreover, Special Term's certification of the action as a class action involved no abuse of discretion"]).

common legal issues applied to every member of the proposed class and each child had his or her own individual circumstances.[8]

The Third Circuit reversed and granted certification in *Baby Neal*, concluding that the District Court abused its discretion in declining to certify the class. The court noted the individualized facts surrounding the children but emphasized that the complaint sought declaratory and injunctive relief—rather than damages—rendering the differences largely irrelevant. The court observed that each child sought to enforce compliance of the statutory requirements and found DHS's "systemic deficiencies in providing legally mandated child care services to be a sufficiently common legal basis to support class certification here" (*id.* at 61).

In another federal case arising in New York in 1997, a number of children in ACS's custody commenced an action alleging that ACS had deprived them of child welfare services required by law in violation of more than a dozen constitutional and statutory provisions (*see Marisol A. v Giuliani*, 126 F3d 372 [2d Cir 1997]). The District Court granted plaintiffs class certification for a class whose membership encompassed children who were or would be in ACS's custody, as well as those children who were at risk of neglect or abuse and whose status was known to ACS—a class totaling more than 100,000 children. On appeal, the Second Circuit held that the District Court did not abuse its discretion in certifying the class. The court acknowledged that each named plaintiff sought to challenge a different aspect of the child welfare system but, stressing rule 23's liberal construction, ruled that plaintiffs had sufficiently demonstrated commonality pursuant to rule 23 (a) (2) based on their allegations that their injuries derived "from a unitary course of conduct by a single system" (*id.* at 377). The court concluded, however, that it would be necessary for the District Court to further refine the class into subclasses of children with similar legal issues.[9]

■ Against this jurisprudential backdrop, we address the propriety of class certification in the present case. Mindful that

---

**8.** Unlike CPLR 901 (a) (2), Federal Rules of Civil Procedure rule 23 (a) (2) does not require that common questions predominate in actions seeking injunctive or declaratory relief; rather, it more broadly allows a class action where "there are questions of law or fact common to the class."

**9.** ACS relies on *J.B. ex rel. Hart v Valdez* (186 F3d 1280 [10th Cir 1999]), where class certification was denied to a proposed class of mentally and

the decision to certify is committed to the sound discretion of the courts below, we cannot say, at this early juncture, that the Appellate Division abused its discretion as a matter of law in affirming the class certification order. Put differently, although this litigation may be close to the outer boundary of the concept of commonality, given the liberal construction intended by the Legislature, we disagree with the dissent's assertion that an affirmance here goes "far beyond the limits the Legislature set on class actions" (dissenting op at 519). Admittedly, each of the plaintiffs and proposed class members possesses his or her own unique factual circumstances and special needs. As ACS notes, a determination regarding appropriate placements will require a particularized inquiry of each plaintiff's requirements.

But the Appellate Division identified four common allegations that transcend and predominate over any individual matters. Specifically, the Appellate Division recognized that all but one of the plaintiffs alleged that ACS had failed to timely make a referral to OMRDD. Second, the court found that plaintiffs claimed that ACS had submitted incomplete or outdated referral packets to OMRDD on their behalf, resulting in unnecessary rejections and further delays. Third, ACS's purported and recurrent failure to meet its permanency planning obligations caused plaintiffs to age out of the foster care system before appropriate services or placements were secured—indeed, most of the plaintiffs are now 21 years of age or older. Finally, the Appellate Division observed that each of the plaintiffs asserted that, when they were referred to OMRDD, OMRDD failed to provide timely services, often placing them on open-ended waiting lists.[10] These

developmentally disabled children in a lawsuit alleging that New Mexico had systematically failed to provide protections and therapeutic services required by statutes and the Federal Constitution. But there, the Tenth Circuit majority merely concluded that the District Court did not abuse its discretion in denying class certification. Moreover, *J.B.* was distinguished by a more recent Tenth Circuit case (*see DG ex rel. Stricklin v Devaughn*, 594 F3d 1188 [10th Cir 2010]). In *DG*, the Tenth Circuit affirmed the certification of a class of foster children in the custody of the Oklahoma Department of Human Services. *DG* distinguished *J.B.*, noting that the plaintiffs in *J.B.* brought claims against numerous agencies and that the proposed class in *J.B.* was extremely broad insofar as it sought to include both custodial and noncustodial children.

**10.** It may well be that budgetary constraints and other obstacles are responsible for OMRDD's waiting lists (*see Matter of Savastano v Prevost*, 66 NY2d 47, 50 [1985], *rearg denied* 66 NY2d 1036 [1985] [recognizing that OMRDD retains discretion under Mental Hygiene Law § 13.15 (a), allowing it to "consider budgetary restrictions in implementing a program"]). But it may also be that OMRDD's difficulties in creating placements are due, in part, to

allegations, if true, would tend to establish a de facto policy followed by ACS of delaying the receipt of services as a result of its practices. Plaintiffs seek to represent class members falling into each of these four categories of injury and ask for declaratory and injunctive relief on their behalf.

We agree with the Appellate Division that this case presents narrower and more discrete common questions in contrast to the broader issue of systemic failure viewed as sufficient for class certification in *Baby Neal* and *Marisol A.* In contrast to *Marisol A.*, where each of the plaintiffs challenged an entirely distinct feature of the child welfare system, plaintiffs in this case focus on four recurring and interrelated harms that are common across the class. Moreover, specialized proof will largely be unnecessary to resolve these common allegations. We therefore need not address whether a "super-claim" of systemic failure predicated on diverse and unrelated injuries, without a more particularized common thread, could satisfy CPLR 901 (a) (2)'s commonality prerequisite, which is more stringent than rule 23 (a) (2), its federal analogue.

Additionally, the class here is more circumscribed than the memberships in *Baby Neal* and *Marisol A.* In *Marisol A.*, the class included all children who were in ACS's custody or who were at risk of entering its custody, numbering "well over 100,000 children" (126 F3d at 376). Here, plaintiffs represent that class membership is less than 200. This lawsuit therefore presents a more compelling case to proceed as a class action than *Baby Neal* and *Marisol A.*, precedents in which the courts upheld class certification under the federal class action provision.

Furthermore, CPLR article 9 affords the trial court considerable flexibility in overseeing a class action. Under CPLR 906 (1), "an action may be brought or maintained as a class action with respect to particular issues." Relatedly, CPLR 906 (2) permits a class to "be divided into subclasses and each subclass treated as a class." Given the four legal issues identified by the Appellate Division in this case, if it sees fit, Supreme Court would have the option of creating subclasses to group together

ACS's failure to timely refer children, inhibiting OMRDD from making future plans and securing proper services or placements. During deposition testimony, for example, one OMRDD witness stated that "funding availability" was not an issue for OMRDD and that ACS's lack of coordination was often detrimental to OMRDD's development and planning process. On this record, the reasons for the allegedly excessive waiting lists remain unclear, warranting discovery.

members with analogous claims. In addition, CPLR 902 allows the trial court to decertify the class at any time before a decision on the merits if it becomes apparent that class treatment is inappropriate.

In sum, we conclude that the Appellate Division weighed the statutory criteria and acted within its discretion in determining that common questions predominate under CPLR 901 (a) (2). In reaching this result, we recognize that commonality cannot be determined by any "mechanical test" and that "the fact that questions peculiar to each individual may remain after resolution of the common questions is not fatal to the class action" (*Friar*, 78 AD2d at 97-98). Rather, it is "predominance, not identity or unanimity," that is the linchpin of commonality (*id.* at 98). The Appellate Division identified .concrete legal issues that predominate and plaintiffs' claims seek to vindicate rights accorded them by statutes and regulations. We concur that, as framed, these claims are justiciable (*see Klostermann v Cuomo*, 61 NY2d 525, 535 [1984]; *see generally Nicholson v Scoppetta*, 3 NY3d 357 [2004]). In upholding class certification, we emphasize that, at this early stage of the litigation, we are not expressing an opinion on the merits of plaintiffs' causes of action. Their resolution must await further proceedings.

We have considered ACS's remaining arguments and find them to be without merit.

Accordingly, the order of the Appellate Division should be affirmed, without costs, and the certified question answered in the affirmative.

Smith, J. (dissenting). The question presented by this case is whether CPLR 901 permits use of the class action device to litigate a claim of "systemic failure" by a government agency. I answer the question no.

The majority seems hesitant to describe this as a systemic failure case. It says that it "need not address whether a 'superclaim' of systemic failure predicated on diverse and unrelated injuries, without a more particularized common thread" could be brought as a class action (majority op at 513). But unless the claim is viewed as one of systemic failure, class action treatment is plainly impossible. If the overarching question of whether the system is working or not is put aside, questions common to the cases of plaintiffs and the people they seek to represent not only fail to predominate over non-common questions; they hardly even exist. Each of the 11 plaintiffs, and

every other developmentally disabled child who is part of or has passed through the New York City foster care system, has his or her own—often very moving—story to tell.

The "amended intervener complaint" (complaint) is 57 pages long, and contains 347 numbered paragraphs. Thirty-six of those pages, and 256 of those paragraphs, are devoted to recounting, separately for each plaintiff, his or her specific problems and the ways in which the New York City Administration for Children's Services (ACS) and the State Office of Mental Retardation and Developmental Disabilities (OMRDD) have failed to cope with them. Similarly, in Supreme Court's 23-page opinion denying partial summary judgment and granting class certification, 11 pages are devoted to a summary of allegations relating to each plaintiff separately. The facts alleged are compelling, but the telling of these stories does not demonstrate that common issues, other than systemic flaws, predominate; it demonstrates the opposite.

And when the complaint finally turns to allegations about plaintiffs and other putative class members in general, the allegations continue to demonstrate how different their situations are: plaintiffs complain that they and others like them have not received the right "specialized placements"; that they and others like them "are often placed in inappropriate facilities that fail to meet their needs"; that their needs for "specialized services" are not being met; and that ACS's employees and agents lack "an adequate understanding of the needs of children with developmental disabilities." There can be no doubt that the "services," "needs" and "placements" referred to are different for each plaintiff and each other member of the putative class—as the repeated use of the word "specialized" emphasizes. Indeed, the very definition of the class certified by the courts below would require an individualized analysis of every case: the class consists of "[i]ndividuals with developmental disabilities who . . . have not received or did not receive services . . . to which they were or are entitled." Thus we cannot know whether a person is a class member before deciding what services he or she is entitled to and whether those services were provided—inevitably, a determination that depends on the facts of each case.

It may make my point clearer to summarize in detail the complaint's allegations about the first named plaintiff, L.J. The complaint says that she suffers from cerebral palsy, which results in physical limitations including quadriplegia, and that

she has also been diagnosed with depression and "math developmental disability." She was placed by ACS at the Woods School in Langhorne, Pennsylvania, where she "received specialized services, including an individualized educational plan." However, the complaint says, Woods was a "segregated residential school placement," and L.J. was "capable of receiving services in and successfully living in a less-restrictive placement." This is shown by an August 2003 psychological evaluation, which demonstrates that with instruction, support and encouragement L.J. would be capable of going, unsupervised, to school and non-school events with friends, belonging to a club or organization and even going on dates. She is described as "a highly motivated young woman who has many goals and dreams for the future, many of which are within reach."

The complaint goes on to allege that, despite its knowledge of these and other relevant facts, ACS moved L.J. to Bayview Nursing and Rehab Center, "a 198-bed skilled-nursing facility" serving "a mostly adult population." L.J., it is alleged, did not require Bayview's level of services, and Bayview was for her "an unduly restrictive setting." It is also alleged that ACS failed to engage in "reasoned decision-making" about the placement at Bayview; that its contact with L.J. was "sporadic" at best; and that ACS failed to make any plans for L.J. to receive appropriate education at Bayview. Finally, it is alleged, ACS essentially washed its hands of L.J., informing her counsel (though not L.J. or her parents) that it was discharging her into her parents' custody.

It may well be that these appalling facts, if proved at trial, would entitle L.J. to a remedy. But it also seems quite clear that the considerable time and effort that would be spent on proving those facts, and giving ACS and OMRDD an opportunity to rebut them, would do nothing to advance the case of any other plaintiff or class member—unless those cases rest on the sweeping proposition that the system as a whole is failing. If this is not a systemic failure case, the predominance test is not satisfied, because class treatment of L.J.'s case and those of other children will not "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated" (*Friar v Vanguard Holding Corp.*, 78 AD2d 83, 97 [2d Dept 1980]).

This case is not at all like a typical class action, in which many victims complain of a single act or a series of very similar acts that affects all of them—e.g., the release of a toxic

substance, a misrepresentation in a widely distributed document, a discriminatory or other unlawful policy consistently applied. The only significant common question in this case is whether the system is working or not.

The majority, if I read its opinion correctly, does not dispute that class action treatment here must be predicated on a claim of systemic failure. Rather, the majority finds that the case is appropriate for class action treatment because certain kinds of systemic failure tend to recur. Thus, the majority refers to "four common allegations that transcend and predominate over any individual matters" (majority op at 512), but these allegations, when examined, are simply four different ways of saying that ACS and OMRDD have failed to act in a timely fashion. Like plaintiffs' other allegations, these are "common" to the 11 plaintiffs and the class they seek to represent only in the sense that they are examples of an alleged breakdown of the system. Systemic failure aside, it makes no more sense to permit a class action by foster care children who suffer from the slowness of city and state bureaucracies than it would to permit a class action by pedestrians who had slipped and fallen on New York City sidewalks. Such a case would not be about the pedestrians' injuries and the City's liability for them; it would be a case about the sidewalk maintenance system.

I therefore turn to the question I think decisive: Should the class action device be used to facilitate "systemic failure" cases? I think not.

I do not suggest, of course, that governmental systems never fail. Indeed, plaintiffs' claim that the system is failing developmentally disabled children in foster care may be well-founded. The allegations of the complaint support the conclusion that the way in which the City and State deal with these children needs to be changed: It may need a top-to-bottom reorganization, or a large infusion of money, or both.

But however worthy the end of reforming the system, class action litigation is not the right means to that end. An action like this one calls upon courts to answer questions that are properly the province of other branches of government: How should delivery of a particular government service be organized? And how much money should be spent on it? These are extremely hard questions, and the executive and legislative branches often get them wrong, but courts have neither the constitutional authority nor the institutional capacity to second-guess the other branches' performance.

Courts have much less skill than professional administrators in deciding which methods of delivering services will be cost-effective, taking into account the limits on the funds available to an agency and the competing demands on those funds. Thus, for a judge to say to a state agency, as plaintiffs here request, "I declare that the system is not working, and I order you to fix it" will, often if not always, have a predictable result: The agency will assert that it is doing the best it can with the funds available—i.e., that nothing can fix the system except more money—and the court will lack the information and expertise to determine whether that is true or not.

As a result, courts may be led, here and in similar cases, to the seemingly attractive solution of issuing orders requiring, on their face or by implication, that the State or municipality spend whatever money is necessary to make the system work. But when courts do this they usurp the proper province of the Governor and Legislature, who must decide—sometimes, as now, in times of great fiscal stress—which of many urgent needs will take priority. A case like this one essentially asks judges to become champions—champions armed with the prestige of the judiciary, and the contempt power—for the needs of a particular group that benefits from state funds. That is not, in my view, the proper role of a court, even where the group seeking our help is as deserving of sympathy as plaintiffs here (see Jones v Beame, 45 NY2d 402 [1978]).

Plaintiffs cite no case in which we have upheld a systemic failure class action. They rely on Klostermann v Cuomo (61 NY2d 525 [1984]), but that was not a case in which courts were asked, as they are here, simply to declare that a system for delivering a government service had broken down and was in need of repair. In Klostermann, the public agencies involved were in repeated noncompliance with the command of Mental Hygiene Law § 29.15 (g), which required preparation of a written service plan, with prescribed contents, for every person discharged from state psychiatric hospitals. We held that an alleged lack of funds did not excuse noncompliance with such a specific statutory directive. This case involves no requirement of comparable specificity.

The New York State case most closely on point is the Appellate Division's well-reasoned decision in Mitchell v Barrios-Paoli (253 AD2d 281 [1st Dept 1999]). The plaintiffs in Mitchell were partially disabled public assistance recipients who claimed that they were being assigned by the city to jobs incompatible with

their disabilities—much as plaintiffs here contend that they are being assigned to inappropriate facilities, or given inappropriate treatment. The *Mitchell* court found that the plaintiffs "raise serious fairness questions . . . and may well have shown their entitlement to CPLR article 78 relief" (*id.* at 283), but held that their case could not proceed as a class action "because common questions of law or fact do not predominate on most claims" (*id.* at 290). The court explained:

> "The class purportedly consists of . . . participants whose assignments exceed their medical limitations. However, determining who is a member of that class would require individualized examination of each person's medical history and the physical demands of her assigned task, which would defeat the class action's goal of saving judicial time and resources" (*id.* at 291).

Lacking support in state authority, plaintiffs rely (as does the majority) on several federal cases permitting class actions similar to this one (*DG ex rel. Stricklin v Devaughn*, 594 F3d 1188 [10th Cir 2010]; *Marisol A. v Giuliani*, 126 F3d 372 [2d Cir 1997]; *Baby Neal for & by Kanter v Casey*, 43 F3d 48 [3d Cir 1994]). These cases were decided under rule 23 of the Federal Rules of Civil Procedure, which differs, in a critical way, from CPLR 901, the governing statute here: In federal class actions seeking declaratory or injunctive relief, there is no requirement that common questions of law or fact predominate over individual ones (*see* Fed Rules Civ Pro rule 23 [a] [2]; [b] [2]; *compare* Fed Rules Civ Pro rule 23 [b] [3]; *see also Baby Neal*, 43 F3d at 56 ["(t)he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class"]). And even under that rule, the federal decisions are questionable. The court in *Marisol A.* acknowledged that the class action it permitted "stretches the notions of commonality and typicality" and "is near the boundary of the class action device" (126 F3d at 377). The reasoning of *Baby Neal* was rejected in *J.B. ex rel. Hart v Valdez* (186 F3d 1280, 1289 n 5 [10th Cir 1999]).

The authors of CPLR 901 (a) (2) chose to set narrower boundaries than does federal rule 23 for the use of a class action in cases like this. It is fair to infer that those authors expected us to be significantly less hospitable than the federal courts to exotic and creative class actions, including those of the systemic failure type. The majority here has gone far beyond the limits the Legislature set on class actions.

I would reverse the Appellate Division's order and deny class certification. I would also grant ACS's motion to dismiss plaintiffs' claims for prospective relief as moot, because the mootness exception is inapplicable for essentially the same reason that class action treatment is inappropriate: each plaintiff's case is unique, and there is no meaningful "likelihood of repetition" of any plaintiff's claim (*see Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 714-715 [1980]).

Judges CIPARICK, PIGOTT and JONES concur with Judge GRAFFEO; Judge SMITH dissents and votes to reverse in a separate opinion in which Judge READ concurs; Chief Judge LIPPMAN taking no part.

Order affirmed, etc.