Dugan v London Terrace Gardens, L.P. (2020 NY Slip Op 04239)





Dugan v London Terrace Gardens, L.P.


2020 NY Slip Op 04239


Decided on July 23, 2020


Appellate Division, First Department


Richter, J.P.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 23, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rosalyn H. Richter, J.P.
Judith J. Gische
Cynthia S. Kern
Jeffrey K. Oing
Peter H. Moulton, JJ.


603468/09 8719 

[*1]William Dugan, et al., Plaintiffs-Respondents-Appellants,
v
London Terrace Gardens, L.P., Defendant-Appellant-Respondent.
William Dugan, et al., Plaintiffs-Respondents,
v
London Terrace Gardens, L.P., Defendant-Appellant. David Blech, et al., Respondents.



Plaintiffs and defendant appeal from the order of the Supreme
Court, New York County (Lucy Billings, J.), entered November 22, 2017, which, to the extent appealed from, denied defendant's motion for summary judgment, and granted in part and denied in part plaintiffs' motion for summary judgment. Defendant appeals from the order of the same court and Justice, entered September 11, 2017, which, to the extent appealed from, expanded the originally certified definition of the class; the order of the same court and Justice, entered November 24, 2017, which granted defendant's motion for payments for interim past and ongoing use and occupancy by respondents David Blech and Margie Chassman, but declined to set the amount, and granted Blech and Chassman's cross motion for summary judgment on their claim for rent overcharge to the same extent as that granted to the class action plaintiffs in the order entered November 22, 2017, and the order of [*2]the same court and Justice, entered August 30, 2017, which denied defendant's motion to make certain interim payments to plaintiffs.




Borah Goldstein Altschuler Nahins & Goidel, P.C., New York (Robert D. Goldstein and Paul N. Grubel of counsel), and Proskauer Rose LLP, New York (Richard M. Goldstein and Seth D. Fier of counsel), for appellant-respondent/appellant.
Himmelstein, McConnell, Gribben, Donoghue & Joseph LLP, New York (Ronald S. Languedoc, William Gribben, Kevin R. NcConnell and Jesse Gribben of counsel), Emery Celli Brinckerhoff & Abady LLP, New York (Matthew Brinckerhoff of counsel) and Bernstein Liebhard LLP, New York (Joseph R. Seidman, Jr. of counsel), for respondents-appellants/respondents.



RICHTER, J.P.


These four appeals arise from consolidated class action litigations challenging the deregulation of hundreds of apartments at London Terrace Gardens (London Terrace), a 10-building housing complex in Manhattan. Plaintiffs are current and former London Terrace tenants, and defendant London Terrace Gardens, L.P. is the owner of the complex. London Terrace, which consists of approximately 1,000 units, was constructed in 1931, and was originally subject to rent control laws. Pursuant to the 1974 Emergency Tenant Protection Act, upon vacancy, rent controlled apartments in London Terrace became subject to rent stabilization. Since 1974, there has been a mix of rent stabilized and rent controlled apartments in the complex.
Beginning in 1993, defendant began to deregulate apartments in London Terrace. The Rent Regulation Reform Act of 1993 allowed building owners to deregulate rent-regulated apartments where rents and/or occupants' incomes exceeded certain statutory thresholds. However, in 2009, the Court of Appeals made it clear that building owners were not entitled to deregulate units while they were simultaneously receiving tax benefits under New York City's J-51 tax abatement and exemption program (Roberts v Tishman Speyer Props., L.P., 13 NY3d 270, 279-280 [2009])[FN1]. Further, apartments in buildings receiving these tax benefits "must be registered with the State Division of Housing and Community Renewal (DHCR), and are generally subject to rent stabilization for at least as long as the J-51 benefits are in force (see 28 RCNY at 5-03 [f])" (id. at 280; see Rent Stabilization Law [RSL] [Administrative Code of City of NY] § 26-504[c] [rent stabilization law shall apply to dwelling units in a building receiving J-51 benefits]).
On July 1, 2003, after performing qualifying improvements to the property, defendant began receiving J-51 tax benefits [FN2]. Prior to that date, defendant had already deregulated approximately 95 apartments in the complex. However, defendant did not, as required by law, return these previously deregulated units to rent regulation. Further, after the J-51 benefits were conferred, defendant continued to deregulate additional apartments, despite the fact that the complex was receiving J-51 benefits. Defendant charged market rents for the deregulated units, did not treat tenants in those units as rent regulated, did not register the apartments with DHCR, and did not follow the rent laws in calculating the proper rents to be charged.
On November 13, 2009, shortly after Roberts was decided, plaintiff William Dugan and nine other London Terrace tenants brought this class action alleging that defendant wrongfully deregulated apartments while receiving J-51 tax benefits, and failed to return previously deregulated apartments to rent stabilization when the J-51 benefits commenced. On December 8, 2009, plaintiff James Doerr brought a separate class action against defendant making similar allegations. In both complaints, plaintiffs alleged that, as a result of defendant's wrongful acts, they were denied rent-regulated status and were charged amounts in excess of the legal rents for their units. Plaintiffs sought, inter alia, a declaration that their apartments are subject to rent regulation, and monetary damages for rent overcharges. Defendant answered and asserted various counterclaims and affirmative defenses, including that the action was barred by the statute of limitations, and that Roberts should not be applied retroactively.
The two actions were subsequently consolidated and a class was certified. Plaintiffs then moved to dismiss defendant's counterclaims and affirmative defenses, and sought partial summary judgment seeking, inter alia, a determination of the proper methodology for calculating the legal rents and the amount of any rent overcharges. Defendant cross-moved for summary judgment seeking, inter alia, dismissal of the complaint on the ground that Roberts is not retroactive, dismissal of the complaint as time-barred, and a declaration on the proper methodology to calculate rents. Both plaintiffs and defendant submitted their own proposed method for calculating rents and overcharges. In a decision entered November 22, 2017, the motion court rejected defendant's statute of limitations defense, and concluded that Roberts may be applied retroactively. The court also set forth a methodology for calculating the legal rents and the amount of any overcharges. Both plaintiffs and defendant appeal from the motion court's order.
Defendant maintains that when it deregulated the affected units, it was relying in good faith on DHCR's pre-Roberts interpretation of the relevant statutes, and that applying Roberts under those circumstances would offend due process. At the outset, defendant is collaterally estopped from advancing its due process argument. We rejected this claim in Matter of London Terrace Gardens, L.P. v City of New York (101 AD3d 27, 31-32 [1st Dept 2012], lv denied 21 NY3d 855 [2013]), a suit where defendant unsuccessfully tried to withdraw from the J-51 program. Although the London Terrace Gardens action arose in a different context, the due process issue decided by the Court there was identical to the one before us now, and defendant had a full and fair opportunity to litigate the issue.
In any event, defendant's argument fails on the merits. In Gersten v 56 7th Ave. LLC (88 AD3d 189, 198 [1st Dept 2011]), this Court held that Roberts should be applied retroactively because the decision simply interpreted a statute that had been in effect for a number of years, and did not establish a new principle of law. Since then, we have consistently adhered to Gersten, and have specifically rejected due process challenges to the retroactivity of Roberts (see Matter of London Terrace Gardens, 101 AD3d at 31-32; Roberts v Tishman Speyer Props., L.P., 89 AD3d 444, 445-446 [1st Dept 2011] [Roberts II]).
Defendant attempts to distinguish Gersten and Roberts II, on the ground that, unlike the building owners in those cases, defendant explicitly relied on DHCR's interpretation of the decontrol statutes at the time it decided to enter the J-51 program. However, we rejected this very same argument in Matter of London Terrace Gardens (101 AD3d at 31-32), and defendant fails to persuasively distinguish that case (see also Gurnee v Aetna Life & Cas. Co., 55 NY2d 184, 192 [1982], cert denied 459 US 837 [1982] [although "the Insurance Department had promulgated regulations based on a construction of (a statute) contrary to that subsequently articulated by [the Court of Appeals]," "[a] judicial decision construing the words of a statute . . . does not constitute the creation of a new legal principle"]). Thus, defendant's challenge to the retroactivity of Roberts is unavailing.
Both plaintiffs and defendant raise various challenges to the motion court's methodology for calculating the legal rents and the amount of any overcharges. On June 14, 2019, New York State enacted the Housing Stability and Tenant Protection Act of 2019 (L 2019, ch 36)(HSTPA), [*3]landmark legislation making sweeping changes to the rent laws and adding greater protections for tenants throughout the State. Of relevance to this appeal is Part F of the HSTPA, which amended RSL § 26-516 and CPLR 213-a, which govern claims of rent overcharge and the statute of limitations for bringing such claims. The HSTPA made significant changes to how rents and overcharges should be determined. RSL § 26-516 now explicitly provides that a court "shall consider all available rent history which is reasonably necessary" to investigate overcharges and determine the legal regulated rent (RSL § 26-516[a], [h]). The new legislation also directed that the statutory amendments contained in Part F "shall take effect immediately and shall apply to any claims pending or filed on or after such date" (HSTPA, Part F, § 7).
In Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal (— NY3d —, — ,2020 NY Slip Op 02127, *9 [2020]), the Court of Appeals determined that "the overcharge calculation amendments [in the HSTPA] cannot be applied retroactively to overcharges that occurred prior to their enactment." The Court also resolved a split in this Department as to what rent records can be reviewed to determine rents and overcharges in Roberts cases (compare Taylor v 72A Realty Assoc., L.P., 151 AD3d 95 [1st Dept 2017], mod — NY3d — [2020] [a court is permitted to examine the entire rental history of an apartment] with Raden v W 7879, LLC, 164 AD3d 440 [1st Dept 2018], affd — NY3d — [2020] [review of the rental history limited to the four-year period preceding the filing of the overcharge complaint]). Regina concluded that "under pre-HSTPA law, the four-year lookback rule and standard method of calculating legal regulated rent govern in Roberts overcharge cases, absent fraud" (2020 NY Slip Op 02127 at *7). Accordingly, we vacate that part of the motion court's order setting forth the methodology for calculating the legal rents and the amount of any overcharges, and remand the matter for the court to set forth a methodology consistent with the Rent Stabilization Law as interpreted by the Court of Appeals in Regina.
Defendant separately appeals from three other orders issued by the motion court. First, defendant challenges a September 11, 2017 order that expanded the originally certified definition of the class. In the initial certification order, the class was defined as "all past and current tenants of London Terrace Gardens who have been charged or continue to be charged deregulated rents during defendant's receipt of J-51 tax benefits." In the class expansion order, the class was redefined as "all past and current tenants of London Terrace Gardens who have resided in units that were deregulated during defendant's receipt of J-51 tax benefits." Thus, whereas the original class included only tenants who were charged deregulated rents during the J-51 period, the proposed new class would encompass tenants who moved in after the J-51 benefits period ended and reside in apartments that, at some point in the past, had been wrongfully treated as deregulated.
CPLR 902 provides that a class action "may be altered or amended before the decision on the merits." However, that provision also states that "[an] action may be maintained as a class action only if the court finds that the prerequisites under [CPLR] 901 have been satisfied." Those requirements are generally referred to as "numerosity, commonality, typicality, adequacy of representation and superiority" (City of New York v Maul, 14 NY3d 499, 508 [2010]). CPLR 902 further requires the court to consider a range of factors before certifying a class.
Here, the motion court improvidently exercised its discretion in expanding the class. The court's order failed to analyze whether class action status was warranted based on the criteria set forth in CPLR 901 and CPLR 902. Conducting that analysis ourselves, we find that the redefined class represents such a fundamental change in the theory of plaintiffs' case that expansion of the class would be improper. When the class was originally certified, plaintiffs maintained, and the court agreed, that its members were tenants who received deregulated leases while the complex was receiving J-51 benefits. The expanded class, however, would include tenants who never lived in the complex during defendant's receipt of J-51 benefits, and who received regulated leases for their tenancies. Thus, the legal issues for this group of tenants are separate and distinct from those of the original class.
In determining whether an action should proceed as a class action, the court must [*4]consider the "extent and nature of any litigation concerning the controversy already commenced by . . . members of the class" (CPLR 902[3]). This class action litigation was commenced over nine years ago, and has spawned expansive motion practice. Expanding the class to add members whose tenancies involve different legal issues from the original class would be inefficient at this late stage of the litigation and would unduly prejudice defendant. Thus, the court's order expanding the class should be reversed, and the class shall remain as originally certified.[FN3]
Next, defendant appeals from a November 24, 2017 order wherein the motion court (i) directed that the methodology it set forth in the class action be used to calculate the legal rent and any overcharges for Apartment 16ABEF; and (ii) ordered the payment of interim past and ongoing use and occupancy for that apartment, but failed to set the amount [FN4]. This apartment was created in 2005 by combining Apartments 16AB and 16EF, both of which were exempt from rent stabilization at the time defendant began receiving J-51 benefits in July 2003. Although it is undisputed that Apartment 16ABEF, and the two apartments that were combined to form it, were all improperly treated as deregulated while the building was receiving J-51 benefits, for the reasons discussed above, we vacate that part of the motion court's order setting forth the methodology for calculating the legal rents and the amount of any overcharges. The matter is remanded for the court to set forth a methodology for calculating rents and any overcharges for Apartment 16ABEF, and the amount of use and occupancy, consistent with the Rent Stabilization Law as interpreted by the Court of Appeals in Regina. We deny defendant's request that we search the record to grant it summary judgment on its nonpayment petition, without prejudice to defendant's filing a summary judgment motion in Supreme Court. Finally, defendant appeals from an August 30, 2017 order wherein the motion court denied its motion to make certain interim payments to plaintiffs in an effort to mitigate any ultimate award of prejudgment interest. Defendant sought to condition its payments on the requirement that plaintiffs repay some or all of those amounts if the court ultimately found in defendant's favor on the issues of liability or the amounts of any overcharges owed to a particular plaintiff. The motion court properly denied the relief requested by defendant. The court was not required to fashion a remedy outside of the CPLR, or grant a motion that addressed only defendant's concerns. To the extent this conclusion may be inequitable, defendant's remedy lies not with this Court, but with the legislature.
Accordingly, the order of the Supreme Court, New York County (Lucy Billings, J.), entered November 22, 2017, which, to the extent appealed from, denied defendant's motion for summary judgment, and granted in part and denied in part plaintiffs' motion for summary judgment, should be modified, on the law, to vacate that part of the order setting forth the methodology for calculating the legal rents and the amount of any overcharges, and otherwise affirmed, without costs, and the matter remanded for the court, after further submissions from the parties, to set forth a methodology for calculating rents and any overcharges consistent with the Rent Stabilization Law as interpreted by the Court of Appeals in Regina; the order of the same court and Justice, entered September 11, 2017, which, to the extent appealed from, expanded the originally certified definition of the class, should be reversed, on the law, without costs, and the [*5]class should remain as originally certified; the order of the same court and Justice, entered November 24, 2017, which granted defendant's motion for payments for interim past and ongoing use and occupancy by respondents David Blech and Margie Chassman, but declined to set the amount, and granted Blech and Chassman's cross motion for summary judgment on their claim for rent overcharge to the same extent as that granted to the class action plaintiffs in the order entered November 22, 2017, should be modified, on the law, to vacate that part of the order setting forth the methodology for calculating the legal rents and the amount of any overcharges, and otherwise affirmed, without costs, and the matter remanded for the court, after further submissions from the parties, to set forth a methodology for calculating rents and any overcharges, and the amount of use and occupancy, consistent with the Rent Stabilization Law as interpreted by the Court of Appeals in Regina; and the order of the same court and Justice, entered August 30, 2017, which denied defendant's motion to make certain interim payments to plaintiffs, should be affirmed, without costs.
The Decision and Order of this Court entered herein on September 17, 2019 (177 AD3d 1 [1st Dept 2019]) is hereby recalled and vacated (see M-1723 and M-1801 decided simultaneously herewith).
All concur.
Order of the Supreme Court, New York County (Lucy Billings, J.), entered November 22, 2017, modified, on the law, to vacate that part of the order setting forth the methodology for calculating the legal rents and the amount of any overcharges, and otherwise affirmed, without costs, and the matter remanded for the court, after further submissions from the parties, to set forth a methodology for calculating rents and any overcharges consistent with the Rent Stabilization Law as interpreted by the Court of Appeals in Regina; the order of the same court and Justice, entered September 11, 2017, reversed, on the law, without costs, and the class should remain as originally certified; order of the same court and Justice, modified, on the law, to vacate that part of the order setting forth the methodology for calculating the legal rents and the amount of any overcharges, and otherwise affirmed, without costs, and the matter remanded for the court, after further submissions from the parties, to set forth a methodology for calculating rents and any overcharges, and the amount of use and occupancy, consistent with the Rent Stabilization Law as interpreted by the Court of Appeals in Regina; and the order of the same court and Justice, entered August 30, 2017, affirmed, without costs.
Opinion by Richter, J.P. All concur
Richter, J.P., Gische, Kern, Oing, Moulton, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JULY 23, 2020
CLERK



Footnotes

Footnote 1:Under the J-51 program, a building owner who makes qualifying improvements to its property is eligible to receive tax abatements and exemptions.

Footnote 2: The J-51 benefits ended on June 30, 2014.

Footnote 3:Although the number of class members in the originally certified class may be impacted as a result of the statutory amendments, the definition of the class should remain the same.

Footnote 4:Defendant had previously commenced a summary nonpayment proceeding against the tenants of this apartment, and the tenants answered and alleged rent overcharges. The summary proceeding was then consolidated with the class action.