OPINION OF THE COURT
Vito M. DeStefano, J.
The plaintiffs move, inter alia, for an order “ [certifying a class pursuant to Article 9 of the CPLR of all inside-sales loan officers who worked for Defendants in their New York office (s) at anytime since May 24, 2007” and “[alppointing Plaintiffs as the class representatives and Plaintiffs’ counsel as Class counsel.”
Background
The named plaintiffs, Michael Carni and Bruce Saper, were “loan officers” at the Valley Stream, New York office of defendant, Continental Home Loans, Inc., a residential mortgage banker. Carni worked as a loan officer for Continental from August 2009 to September 2010. Saper worked as a loan officer from August 2009 to December 2009.
Prior to 2010, the compensation of Continental’s loan officers varied as there were different ways loan officers were paid (Reeps aff in opposition ¶ 12). In 2010, Continental’s policies with respect to loan officer classification and compensation changed. Since 2010, most of Continental’s loan officers who have remained employed or gained employment after April 2010 entered into employment agreements (Reeps aff in opposition ¶¶ 11-12).[1]
In April 2010, Carni executed a “Part Time Outside Loan Originator Employment Agreement” which provided that Carni, as a “part-time loan officer” was a “part-time” “commissioned employee” and not permitted to work more than 19.5 hours per week (exhibit 2 to affirmation in opposition).
Saper did not execute any employment agreement as he left Continental’s employ prior to 2010.
In May 2013, the named plaintiffs commenced the instant action, “individually and on behalf of all others similarly situat *790 ed.”[2] against Continental and some of its controlling officers, namely, defendants Michael McHugh, Eric Reeps, Richard Tschernia, and Santo Barretta, to recover, inter alia, unpaid minimum wages and overtime compensation owed to them and all other similarly situated loan officers employed, or formerly employed, by Continental (Continental and the individually named defendants are collectively referred to as defendants).[3]
The Complaint
According to the complaint, the named plaintiffs (and all other similarly situated persons) are currently or formerly employed by Continental on a full-time basis as inside sales loan officers; all inside sales loan officers employed by defendants performed essentially the same job duties, including the primary duty which was to sell residential mortgage loans; plaintiffs were misclassified by the defendants as exempt under New York State wage and hour laws; the defendants managed and controlled plaintiffs’ employment including the amount of overtime worked, wages, hours, and all related employee compensation policies for all its loan officers located in New York; as per defendants’ uniform company-wide policies, plaintiffs were not paid the applicable minimum wage or weekly guaranteed salary; plaintiffs routinely worked in excess of 40 hours per week (including evenings and weekends) without overtime compensa *791 tion in violation of New York’s labor laws; defendants failed to pay minimum wages and/or overtime wages to plaintiffs by improperly designating the position of loan officer as exempt from overtime requirements; defendants failed to make and maintain accurate records of time worked by plaintiffs; and plaintiffs and other members of the class are similarly situated because, inter alia, they have all had similar duties, performed similar tasks, worked in excess of 40 hours per week without overtime compensation, and were subjected to similar pay plans (complaint ¶¶ 13-33).
The named plaintiffs seek certification of the following class: “All individuals who were employed by Continental Home Loans, Inc. as full time inside sales Loan Officers in the state of New York at any time during the relevant statute of limitations period” (complaint ¶ 36).
The Instant Motion
The defendants’ answer was followed by the instant motion for an order, inter alia, certifying as a class “all inside-sales loan officers who worked for Defendants in their New York office(s) at anytime since May 24, 2007.”
In support of their application for class certification, the named plaintiffs argue that the defendants “uniformly administered and enforced their sales policies on all loan officers” and that the defendants’ “practices with respect to loan officer duties, pay plans, and timekeeping were similar if not exactly the same.” With respect to compensation, the plaintiffs contend that until April 2010, loan officers were paid on a commission-only basis and, after April 2010, some loan officers began to receive a biweekly recoverable draw of $455; that loan officers were never paid a base or guaranteed minimum salary, nor were they ever compensated for working in excess of 40 hours per week (mem of law in support at 3).
The crux of the dispute at bar is whether the named plaintiffs are inside sales loan officers or outside sales loan officers. According to the plaintiffs:
“Defendants do not contend that their inside sales loan officers are exempt, instead they assert that outside sales loan officers are exempt. Defendants’ defense that their outside sales loan officers are exempt, while not in dispute, is irrelevant. Any loan officer genuinely employed in outside sales is not included in Plaintiffs’ class definition. The class the Court should certify consists only of those inside- *792 sales loan officers who meet the definition set forth above, and Defendants had no legal basis for failing to pay these employees minimum wage or the required overtime premium for all time worked in excess of 40 hours per work week” (mem of law in support at 6).
In opposition, the defendants argue:
“Class certification is unwarranted in this case where, in order to meet the class certification requirements of CPLR 901 and 902, Plaintiff must establish company-wide unwritten and unlawful procedures affecting all inside loan officers employed by Continental. The claims of the two Plaintiffs, whose experiences were limited to a single Continental branch, do not demonstrate any basis for concluding that the alleged misconduct reflects company-wide practices. The proposed class here includes various individuals who are not similarly situated insofar as significant differences exist with respect to the existence of employment agreements, the time-keeping and payment practices applicable to each proposed class member, and the exempt/nonexempt status of proposed class members, leading to fundamental differences in the nature of their claims, the necessary proof to support the varied claims, and the applicable defenses” (mem of law in opposition at 1).
For the reasons that follow, the plaintiffs’ motion for class certification is denied.
The Court’s Determination
The proponent of class certification bears the burden of establishing the following statutory criteria promulgated under CPLR 901 (a): (1) the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable; (2) there are questions of law or fact common to the class which predominate over any questions affecting only individual members; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; (4) the representative parties will fairly and adequately protect the interest of the class; and (5) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Importantly, each requirement is an essential prerequisite to class action certification and whether each factor *793 has been established rests within the sound discretion of the trial court (Liechtung v Tower Air, 269 AD2d 363 [2d Dept 2000]; see also Mix v Wal-Mart Stores, Inc., 57 AD3d 1044 [3d Dept 2008]).
Furthermore, in determining whether an action may proceed as a class action, the court must consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the impracticability or inefficiency of prosecuting or defending separate actions; (3) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (4) the desirability or undesirability of concentrating the litigation of the claim in the particular forum; and (5) the difficulties likely to be encountered in the management of a class action (CPLR 902).
A class action certification must be founded upon an evidentiary basis. Thus, general or conclusory allegations in the affirmation of plaintiffs’ counsel and exhibits attached thereto are insufficient to sustain a plaintiffs burden of establishing compliance with statutory requirements for class action certification (Rallis v City of New York, 3 AD3d 525 [2d Dept 2004]).
Predominance of Common Issues (CPLR 901 [a] [2])
As a precondition to the maintenance of a class action, there must be questions of law or fact common to the class which predominate over any questions affecting only individual members (CPLR 901 [a] [2]). Accordingly, when questions of law or fact affecting only individual members of a purported class predominate over questions common to that class, class action status should not be granted (Geiger v American Tobacco Co., 277 AD2d 420 [2d Dept 2000]). “ ‘[Predominance, not identity or unanimity,’ ... is the linchpin of commonality” (City of New York v Maul, 14 NY3d 499, 514 [2010]).
With respect to commonality, the plaintiffs maintain that “several common legal issues exist” (plaintiffs’ mem of law in support at 10). Specifically, the plaintiffs argue as follows:
“Indeed, the very nature of Plaintiffs’ claim — which challenges Defendants’ compensation scheme — necessarily involves common questions of law. These common legal questions include whether Defendants’ commission-only pay plan, which applied to all loan officers, violates the New York Labor Articles, whether Defendants misclassified their loan officers as exempt from overtime, and whether Defendants *794 failed to maintain accurate time records as required by . . .New York Labor Law . . . Here, Plaintiffs challenge the legality of Defendants’ policy of classifying their inside-sales loan officers as exempt. It is the common question at the core of this case and links all of the class members” (plaintiffs’ mem of law in support at 10-11).
The defendants, on the other hand, maintain that the
“members of the proposed class had vastly different employment experiences and that the proposed class lacks commonality because it includes 1) exempt and non-exempt individuals, 2) both full-time and part-time employees, 3) employees that worked pursuant to different agreements for different managers at different branches with different practices, and 4) employees that worked different amounts, were paid differently, and will not be subject to the same method of determining damages” (defendants’ mem of law in opposition at 16-17).
Here, the named plaintiffs failed to sustain their burden of demonstrating that questions of law or fact common to the class predominate over any question affecting only individual members (see Smilewicz v Sears Roebuck & Co., 82 AD3d 744 [2d Dept 2011]).
In support of their motion, the plaintiffs submit numerous affidavits from various loan officers, including Carni and Saper, who worked for Continental. Both Carni and Saper allege the following in their affidavits:
“I regularly worked in excess of 40 hours per week and often worked as many as 60 hours per week selling home loans. Oftentimes I worked evenings, early mornings and weekends. My supervisors encouraged me and other loan officers to work long hours exceeding 40 hours in given workweeks because the more loan products I sold, the more profit Continental would make. Continental’s management would reprimand or terminate loan officers who were not working hard enough. But even these loan officers were working more than 40 hours per week. If loan officers wanted to remain in good standing with Continental’s management, they had to work more than 40 hours per week.
“I was not paid overtime for the time I worked over 40 hours per week. I was not paid minimum wage.
*795 “While employed by Continental, I worked with other loan officers who I observed on a daily basis. Like me, all these loan officers sold loans as their primary duty, regularly worked in excess of 40 hours per week, and were paid pursuant to the same or similar pay plan described above. I knew this because I personally observed other loan officers regularly working over 40 hours a week and was told by Continental that all of its loan officers were paid in the same or similar way. I learned from other loan officers that all of Continental’s loan officers were paid the same way. I was required to attend weekly meetings with other loan officers. During these meetings, Continental’s management reemphasized that our primary duty was selling home loans and that we would not receive payment unless we made sales, encouraged us to work long hours, and gave accolades to those loan officers putting in the most time.
“Continental did not record the time I worked or the time worked by other loan officers. While I was employed, Continental did not have a time keeping system for its loan officers.”[4]
Initially, the court points out that the affidavits submitted in support of plaintiffs’ application for class certification (with the exception of Hartman’s affidavit)[5] appear to be identical, with minor variations (see Mendoza v Casa de Cambio Delgado, Inc., 2008 WL 938584, 2008 US Dist LEXIS 27519 [SD NY, Apr. 7, 2008, No. 07CV2579(HB)]). Notwithstanding the identical nature of each of the affidavits, the court concludes that neither Carni’s nor Saper’s affidavit contain the requisite factual nexus with the other loan officers who submitted affidavits (see id.). Of the 12 loan officers who provided affidavits in support of the plaintiffs’ motion, only Ronald Belgene was a loan officer who worked in the defendant’s Valley Stream office, like the two *796 named plaintiffs.[6] The fact that only one of the affidavits was from a loan officer who worked in the Valley Stream office is significant given the affidavit of Eric Reeps, Continental’s chief operating officer since 2008, stating that the determination of how a loan officer was paid requires investigation into the circumstances of the individual loan office, as compensation depended on a number of factors (Reeps aff in support ¶ 12). In this regard, the court notes that each branch office had different managers and different business practices.
Further, the responsibilities of loan officers varied depending on whether they were full-time outside loan officers, part-time outside loan officers, full-time inside loan officers or part-time inside loan officers (Reeps aff in support ¶ 11). A “full time outside loan originator employment agreement” provides that the “employment is full-time, meaning that [employee] must work at least 40 hours per week” (see e.g. exhibit Y to affirmation in opposition). In an “inside mortgage loan originator” agreement, the employee “acknowledges that s/he does not and will not work more than 40 hours per week, unless additional hours are approved in advance and in writing by his/her supervisor.” These employees were paid a base salary of $290 per week (see e.g. exhibit AA to affirmation in opposition). The “part time outside loan originator employment agreement” provides that the “employment is part-time, meaning that [employee] may not work in excess of 19.5 hours per week” (see e.g. exhibit W to affirmation in opposition).[7] “Dissimilarities within the *797 proposed class are what have the potential to impede the generation of common answers” (Wal-Mart Stores, Inc. v Dukes, 564 US —, —, 131 S Ct 2541, 2551 [2011] [“What matters to class certification ... is not the raising of common ‘questions’ — even in droves — but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation”] [citation omitted]).
The court also notes that the purported class would include numerous loan officers who worked in the Valley Stream office during the same time period as the named plaintiffs. In that regard, the record contains affidavits from current and former loan officers of Continental’s Valley Stream office who deny that they were instructed to work from the office and indicated that, to the best of their knowledge, all of the loan officers who worked out of the Valley Stream office were outside loan officers not required to work from the office for any period of time (see exhibits 13, 14, 15 to affirmation in opposition; see Alix v Wal-Mart Stores, Inc., 57 AD3d at 1044).[8]
The fact that loan officers who worked out of the Valley Stream branch office were outside loan officers was confirmed by the Valley Stream branch managers. According to Michael DeDominicis, “[a] 11 of the loan officers who have ever worked from the Valley Stream office are outside loan officers” (exhibit 17 to affirmation in opposition ¶ 5).[9] Similarly, Phil Berwald, another branch manager of the Valley Stream office, stated in his affidavit that loan officers in the Valley Stream office were outside loan officers who generally did not work from the office *798 and, more specifically, that “Carni and Saper, like all of the loan officers at the Valley Stream branch, were outside loan officers” (exhibit 12 to affirmation in opposition ¶¶ 3, 7). In the same vein, branch manager Robert Flower indicated that “[a]ll of the loan officers in the Valley Stream office were outside loan officers and, accordingly, they had essentially the same duties” and that the “nature of the Valley Stream loan officers’ responsibilities required them to work outside the office” (exhibit 18 to affirmation in opposition ¶¶ 6-7).
Plaintiffs have not established that “there are questions of law or fact common to the class which predominate over any questions affecting only individual members” (CPLR 901 [a] [2]). Significantly, it is not enough for plaintiffs to prove that issues exist that are common to the entire class, or even that they are substantial and significant. Rather, the named plaintiffs must show that these issues predominate over unique circumstances that may well characterize each aggrieved loan officer’s complaint (see Lieberman v 293 Mediterranean Mkt. Corp., 303 AD2d 560, 561 [2003] [predominance of individualized factual questions rendered case unsuitable for class treatment]).
Here, the plaintiffs have alleged improper employment practices that they contend were routinely implemented by Continental to deprive employees of proper compensation while at the same time getting loans. Specifically, they charge that Continental failed to pay minimum wages and/or overtime wages to inside loan officers who worked in excess of 40 hours per week. Establishing the existence of these practices and their impact on a given loan officer would necessarily require a detailed analysis specific to each loan officer inasmuch as the purportedly common issues proposed by the named plaintiffs are actually dependent on a multitude of factual inquiries which must be resolved on a case by case basis (mini-trials, etc.). Indeed, whether an individual is an inside sales loan officer is, in and of itself, necessarily individualized and fact specific. Because the plaintiffs’ claims pertain to differently classified loan officers, in different Continental locations, under different managers, who performed duties inside and outside of their offices to varying degrees and in different ways, the plaintiffs’ claims — as well as any determinations to be made concerning damages — are too highly individualized to form the basis for a class action (see Tracy v NVR, Inc., 293 FRD 395 [WD NY 2013]; Wal-Mart Stores, Inc. v Dukes, 564 US —, 131 S Ct 2541 [2011] *799 [certification of class action under rule 23 of the Federal Rules of Civil Procedure denied where broad disparities between employees’ job settings, caused by broad discretion given to managers, would require resolution of their discrimination claims by means of a series of “mini-trials” rather than a single action]; Evans v City of Johnstown, 97 AD2d 1, 3 [1983] [the damages to which each class member would be entitled would necessarily depend upon his or her individual circumstances and could only be accurately ascertained by a fact-specific inquiry into each individual complaint]).
Conclusion
The named plaintiffs have not satisfied their burden that certification of this action is appropriate inasmuch as common legal and/or factual issues do not predominate over individualized claims and the interests of judicial economy would not be served by the multitude of fact-intensive “mini-trials” that a class action of this nature would require.
Accordingly, it is hereby ordered that the plaintiffs’ motion is denied in its entirety.

. Before April 2010, some loan officers had employment agreements and others did not.

. Similarly situated persons are those who have worked for defendants as inside sales loan officers in New York.

. On March 8, 2012, Sean Bristol commenced a federal action in the Eastern District of New York (Bristol v Continental Home Loans, Inc., US Dist Ct, ED NY, index No. 12 CV 1130) against Continental asserting claims pursuant to the Fair Labor Standards Act (29 USC § 201 et seq.) (FLSA) and for violations of the New York Labor Law. On October 1, 2012, the parties in the federal action requested that the court conditionally certify the case as an FLSA section 216 (b) collective action. The joint stipulation was “so ordered” by Judge Leonard Wexler. Importantly, the standard for class certification under rule 23 of the Federal Rules of Civil Procedure is “not relevant to an FLSA collective action. Unlike under Rule 23, ‘no showing of numerosity, typicality, commonality, or representativeness need be made’ ” (Grant v Warner Music Group Corp., 2014 WL 1918602, *4, 2014 US Dist LEXIS 65664, *12 [SD NY, May 13, 2014, No. 13 Civ. 4449(PGG)]). As a result, the “similarly situated” standard for authorizing notice to potential opt-in plaintiffs in an FLSA collective action is “considerably more liberal than class certification under Rule 23” (2014 WL 1918602, *4, 2014 US Dist LEXIS 65664, *12). Moreover, “[wjhatever significance ‘conditional certification’ may have in § 216 (b) proceedings, it is not tantamount to class certification under Rule 23” (Genesis Healthcare Corp. v Symczyk, 569 US —, —, 133 S Ct 1523, 1532 [2013]; see also Mendoza v Casa de Cambio Delgado, Inc., 2008 WL 938584, 2008 US Dist LEXIS 27519 [SD NY, Apr. 7, 2008, No. 07CV2579(HB)] [low bar for allegations required for collective action certification]).

. Saper worked as a loan officer from August 2009 to December 2009. Although Saper states in his affidavit that he worked 40 to 60 hours a week from the Valley Stream Continental office, Saper also testified at his deposition that he worked three to four days a week at his wife’s deli in Babylon which was sold in 2010 (exhibit K to plaintiffs’ reply at 33-34). In addition, while Carni was working for Continental, he was working as a consultant for a restaurant that was in the process of opening. Carni and Saper both testified at their depositions that they arrived home from work at about 6:30 in the evening.

. Dean Hartman worked as a manager for Continental from 2006 until July 2011 and managed a team of loan officers at Continental’s headquarters in Melville (Hartman aff in support ¶¶ 2-3).

. Monika DeJesus worked in the Melville office from March 2007 through September 2011. Kenneth Farrell worked in the Melville and East Meadow offices from January 2007 through September 2011. James Waldeck worked in the Melville office from 2005 to August 2011. Ricardo Caicedo worked at the Woodhaven, Queens Village, and Melville offices from November 1999 to August 2011. Ronald Cooperman worked in the Jericho office from March 2009 through September 2010. Sean Bristol worked in the Melville and East Meadow offices from March 2009 to April 2010. John Petoske worked in the Melville office from March 2008 to July 2010. Elliot Rogers worked at the Baldwin and Syosset offices from 2009 to June 2012. Leonard Volodarsky worked in the Melville office from October 10, 2007 to September 30, 2009.

. Another type of agreement executed in April 2011 was a “loan officer employment agreement” which provided as follows: “[E]mployee acknowledges that s/he is being scheduled to work 40 hours per week (the ‘Maximum Hours’). Employee may exceed the Maximum Hours only if additional hours are approved in advance and in writing by the Manager.” “[Continental] shall pay Employee base compensation of $290 per week based on an hourly rate of $7.25 for the Maximum Hours of work.” “Employee is eligible for additional overtime pay if s/he exceeds 40 hours in a single week, at the rate of 1.5 times the average hourly rate” (see e.g. exhibit SS to affirmation in opposition).

. Loan officers Jan Rogowski and Francisco Veras were outside loan officers who worked from the Valley Stream office and are no longer affiliated with Continental. Loan officer Anthony Cetta is an outside loan officer working out of the Valley Stream branch and is currently working in that capacity. An affidavit from a former loan processor who worked in the Valley Stream office at the same time the named plaintiffs were loan officers indicated in her affidavit that .all of the loan officers from the Valley Stream office were outside loan officers (exhibits 13-16 to affirmation in opposition).

. Michael DeDominicis also stated in his affidavit that
“[t]he business hours of the Valley Stream office are Monday through Friday from 9 am to 5 pm. Loan officers are unable to access the office outside of regular business hours because the building is locked and a device, called a key fob, is required to open the office. Loan officers, including Carni and Saper, were not issued key fobs so that they were unable to access the office during early morning hours or weekends unless they asked for and obtained special permission to do so. Carni and Saper never asked me for permission to work in the office on a weekend” (exhibit 17 to affirmation in opposition ¶ 4).