Matter of Correction Officers Benevolent Assn., Inc. v Poole (2020 NY Slip Op 07003)





Matter of Correction Officers Benevolent Assn., Inc. v Poole


2020 NY Slip Op 07003


Decided on November 25, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 25, 2020

530000

[*1]In the Matter of Correction Officers Benevolent Association, Inc., Appellant,
v
Sheila Poole, as Acting Commissioner of the Office of Children and Family Services, et al., Respondents.

Calendar Date: October 22, 2020

Before: Garry, P.J., Clark, Devine, Aarons and Reynolds Fitzgerald, JJ.


Koehler & Isaacs LLP, New York City (Howard Wien of counsel), for appellant.
Letitia James, Attorney General, Albany (Robert M. Goldfarb of counsel), for Acting Commissioner of the Office of Children and Family Services and others, respondents.
James E. Johnson, Corporation Counsel, New York City (Elina Druker of counsel), for Mayor of the City of New York and others, respondents.



Garry, P.J.
Appeal from a judgment of the Supreme Court (Ceresia, J.), entered July 31, 2019 in Rensselaer County, which, among other things, dismissed petitioner's application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to review a determination of respondents Office of Children and Family Services and Commission of Correction denying a request by the City of New York and respondent New York City Department of Corrections for a waiver of a prohibition on chemical agents at the Horizon Juvenile Center.
In 2017, as part of the "Raise the Age" legislation that changed the age of criminal responsibility from 16 to 18, the Legislature enacted Correction Law § 500-p. This statute prohibited youths under the age of 18 from being housed at Rikers Island in New York City, and required all such young people to be transferred by October 1, 2018 to specialized juvenile detention facilities. Horizon Juvenile Center was designated to house youths aged 16 and 17 for this purpose and, as required by Correction Law § 500-p, was certified by respondent Office of Children and Family Services and respondent Commission of Correction (hereinafter collectively referred to as the certifying respondents). Horizon was jointly operated by two New York City agencies, respondent New York City Administration for Children's Services (hereinafter ACS) and respondent New York City Department of Corrections (hereinafter DOC), and was initially staffed by over 300 correction officers employed by DOC and represented by petitioner, as well as ACS employees with expertise in adolescent behavioral management.
Once in August 2018 and twice in September 2018, at petitioner's request, the City of New York and DOC jointly applied to the certifying respondents for temporary waivers of certain statutory and regulatory prohibitions against the use of a chemical restraint commonly known as pepper spray at facilities like Horizon. The applications sought temporary waivers to permit correction officers to use pepper spray at Horizon during a one-year transitional period, a 30-day period, and a limited one-week waiver period, respectively. The certifying respondents denied the first and second applications, finding, among other things, that Horizon was subject to the jurisdiction of respondent Justice Center for the Protection of People with Special Needs and was therefore governed by corresponding statutes protecting vulnerable persons from abuse and neglect, and that the use of pepper spray constituted aversive conditioning within the meaning of these statutes, and was therefore prohibited. The third request was conditionally granted, but the certifying respondents thereafter determined that the specified conditions had not been satisfied.
By order to show cause, petitioner commenced this combined CPLR article 78 proceeding and action for a declaratory judgment seeking, as pertinent here, to annul the waiver determinations. The certifying respondents, the Justice Center and individuals named as respondents in their capacities as officials of these entities (hereinafter collectively referred to as the State respondents) opposed the petition/complaint. Petitioner then filed an amended petition/complaint that joined DOC, ACS and individuals named in their capacities as officials of these agencies as respondents, and also named respondent Bill de Blasio as Mayor of the City of New York (hereinafter collectively referred to as the City respondents). The City respondents cross-moved to dismiss the amended petition/complaint against them, and the State respondents filed an answer. Petitioner opposed the cross motion and sought injunctive relief and leave to amend the amended petition/complaint. The State respondents [*2]opposed. The court denied petitioner's applications for leave to amend and injunctive relief, granted the City respondents' cross motion and dismissed the remainder of the amended petition/complaint. Petitioner appeals.
We find that the combined proceeding and action is moot. "As a general principle, courts are precluded from considering questions which, although once live, have become moot by passage of time or change in circumstances" (City of New York v Maul, 14 NY3d 499, 507 [2010] [internal quotation marks and citation omitted]; see Matter of Ballard v New York Safety Track LLC, 126 AD3d 1073, 1075 [2015]). "[A]n appeal is moot unless an adjudication of the merits will result in immediate and practical consequences to the parties" (Coleman v Daines, 19 NY3d 1087, 1090 [2012]). Here, each of the three waiver applications expressly limited the proposed use of pepper spray to transitional periods during which correction officers would temporarily be permitted to use the substance while they became familiar with other de-escalation techniques. Taken together, the applications described the operational challenges posed by the transfer as "unprecedented," noted that an "abrupt shift" away from the use of pepper spray posed safety concerns for both staff and young people, and asserted that the waivers would help to "stabilize the environment at Horizon [during this transitional period]. . . and allow the staff a period of time to become more adept at using alternative tools." The applications thus reveal that the purpose of the waivers was to address specific operational challenges that were anticipated to exist in the immediate aftermath of the arrival at Horizon of large numbers of young people, when correction officers had not yet been fully trained in the use of alternate crisis management tools, and that the waivers were not intended to cover everyday operations nor to extend indefinitely into the future.
More than two years have passed since the transfer of these young people from Rikers Island to Horizon was completed in October 2018, and the transitional period that the waivers were intended to address has ended. Although the applications did not identify a specific date range for this time period, the application for the longest, one-year waiver provided that, if the waiver was granted, the use of pepper spray at Horizon would be completely eliminated by September 2019. Moreover, the State respondents report that, as of July 2020, the correction officers who were covered by the waiver applications have been replaced by ACS employees and no longer provide daily direct care to young people housed at Horizon. Finally, the City respondents assert that the young people who were housed at Horizon during the transitional period covered by the waiver applications have now "aged out" by reaching the age of 18 and, thus, have been released or transferred to adult facilities. These include young people who were 16 or 17 years old when they were transferred from Rikers Island to Horizon, and a second group who were 17 years old when they were arrested during the period between October 2018 and October 2019. According to the City respondents, no one belonging to either group remained at Horizon after July 2020, when the youngest of them turned 18.[FN1] Thus, the temporary [*3]conditions that prompted the waiver applications no longer exist, and a judicial determination as to whether they were properly denied would have no practical effect (see Matter of Police Benevolent Assn. of N.Y., Inc. v State of New York, 161 AD3d 1430, 1430-1431 [2018]; Matter of Ballard v New York Safety Track LLC, 126 AD3d at 1075).
We reject petitioner's argument that the exception to the mootness doctrine applies because correction officers who were previously employed in direct care positions at Horizon continue to conduct perimeter patrols at the facility and, thus, may have a continued need to use pepper spray as a crisis management tool. "An exception to the mootness doctrine may apply . . . where the issue to be decided, though moot, (1) is likely to recur, either between the parties or other members of the public, (2) is substantial and novel, and (3) will typically evade review in the courts" (Coleman v Daines, 19 NY3d at 1090 [citations omitted]; see Matter of Hearst Corp. v Clyne, 50 NY2d 707, 714-715 [1980]). The waiver applications were expressly based upon the unusual circumstances that prevailed temporarily at Horizon as a result of the adoption of the Raise the Age legislation. Nothing in the record indicates that such exceptional conditions are likely to recur at Horizon or any other facility. If, as petitioner argues, there is an ongoing need for the use of pepper spray by correction officers at Horizon, that should be the subject of a separate application tailored to current conditions there. Accordingly, the exception to the mootness doctrine does not apply, and the appeal must be dismissed (compare Coleman v Daines, 19 NY3d at 1090; Matter of Mental Hygiene Legal Serv. v Delaney, 176 AD3d 24, 30-31 [2019], lv granted 35 NY3d 912 [2020]).
Clark, Devine, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the appeal is dismissed, as moot, without costs.



Footnotes

Footnote 1: Counsel for the parties represented to this Court at oral argument that Horizon continues to house a separate group of young people known as adolescent offenders, consisting of youth aged 16 or 17 charged with certain offenses that remain in criminal court pursuant to the Raise the Age legislation, and that this group does not include anyone who was directly affected by the transitional conditions described in the waiver applications.