| **Hogan v Ulta Salon** |
|:---:|
| 2024 NY Slip Op 31197(U) |
| April 7, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 651986/2020 |
| Judge: Andrea Masley |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 48

---------------------------------------------------------------------------------X

| | |
|---|---|
| SARAH HOGAN, ELIA RAMIREZ, AMBER MAHA, JESSICA SHELP | **INDEX NO.** 651986/2020 |
| Plaintiff, | **MOTION DATE** 06/24/2022 |
| - v - | **MOTION SEQ. NO.** 009 |
| ULTA SALON, COSMETICS & FRAGRANCE, INC., | |
| Defendant. | **DECISION + ORDER ON MOTION** |

---------------------------------------------------------------------------------X

HON. ANDREA MASLEY:

The following e-filed documents, listed by NYSCEF document number (Motion 009) 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 97, 98, 100, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 129, 130, 131, 134, 135, 136, 137, 138, 139, 143, 144, 145, 158

were read on this motion to/for                              MISCELLANEOUS                              .

Upon the foregoing documents, it is

Plaintiffs Sarah Hogan, Elia Ramirez, and Jessica Shelp move, pursuant to

CPLR 901 and 902, for an order certifying three classes of individuals who, from May

26, 2017 to the present, purchased online any product from defendant, Ulta Salon,

Cosmetics & Fragrance, Inc. (Ulta) that was advertised as "vegan" but listed an animal-

derived ingredient called "carmine".  The separate classes are identified as individuals

who after that date bought the products within the states of New York, California and

Illinois.[1]  For the reasons set forth below, the motion is denied.

---

[1] Plaintiffs originally sought certification of five classes.  However, by stipulation dated June 23, 2022 (NYSCEF 82), plaintiffs dismissed plaintiff Amber Maha, the only class representative for Florida.  Accordingly, plaintiffs are no longer seeking certification of a Florida class.  Plaintiffs also do not seek certification of a nationwide class.

**651986/2020   HOGAN, SARAH vs. ULTA BEAUTY, INC.**                              **Page 1 of 17**
**Motion No.  009**

## BACKGROUND

Plaintiffs allege in the Second Amended Class Action Complaint (SAC), Ulta is a national cosmetics retail chain that sells its products through hundreds of retail stores and its online retail website. (NYSCEF 82, Second Amended Complaint ¶¶ 12, 18.) Ulta advertised products in its online store as being "vegan" or "free of animal derived products," including Nudestix Intense Matte Lip and Cheek Pencil, NYX Professional Makeup Sweet Cheeks Powder Blush, Smashbox Super Fan Mascara, and Ulta Luxe Lipstick. (*Id.*, ¶ 19.) However, the products were not vegan or free of animal derived products because they contained carmine, a pigment made from the ground up scales of Cochineal beetles. (*Id.*, ¶¶ 6, 21-22.)

Plaintiffs further allege in the SAC that as matter of personal morality, plaintiffs and other consumers specifically seek to buy vegan cosmetics to avoid products that have been tested on animals or contain any animal products, including insects. (*Id.*, ¶¶ 3-4.) Vegan products and products marked cruelty free command a premium because such items are consistent with consumer's beliefs, but scarce. (*Id.*, ¶ 9). Plaintiffs relied upon defendant's representations that the products were vegan, were outraged upon discovering that they were not, and the products became unusable and worthless to them. (*Id.*, ¶¶ 45-46.) Had they known that the products were not vegan, plaintiffs and other vegan consumers would not have bought them. (*Id.*, ¶ 10.)

In discovery, Ulta's expert identified 178 individual products or "stock keeping units" (SKUs) grouped within 30 product "families" that were advertised as "vegan" or "free of animal derived ingredients" on the company's website but whose ingredients contained the word "carmine." (NYSCEF 114, Expert Report of Lorin M. Hitt, Ph.D [the

**651986/2020  HOGAN, SARAH vs. ULTA BEAUTY, INC.**
**Motion No. 009**

**Page 2 of 17**

2 of 17

Hitt Report], ¶ 40.)  Each family was comprised of SKUs that are differentiated by their color or shades but are otherwise identical or nearly identical.  (*Id.*, ¶ 19.)  Of the 30 product families, two of them -- UBC Luxe Lipstick and UBC Matte Metallic Liquid Lipstick – were manufactured by Ulta.  (*Id.*, ¶¶41-42.)  Those two families are comprised of 47 SKUs.  (*Id.*, ¶41.)  The remaining 28 families, comprised of 131 SKUs, are third-party products representing 13 different brands.  (*Id.*, ¶¶ 41-42.)

Ulta makes all the decisions regarding the merchandising of its own manufactured products.  (*Id.*, ¶20.)  The presentation of product information, including whether a product is vegan, differs depending on whether it appears online or in-store.  (*Id.*)  Online, a product's webpage includes both a description of the product's features and ingredients, but in-store, the information may be displayed in various places including on signage, shelf-edge strips and the product's package. (*Id.*)   If some, but not all of the shades of a particular product family contained carmine, the ingredient list could state that the product "may contain" carmine.  (*Id.*, ¶38.)   Ulta has less control over the merchandising of the third-party brands it sells as it largely accepts the online item descriptions and ingredients and in-store graphics provide by the manufacturers.  (*Id.*, ¶¶ 20-21.)  By July 2020, after this action was commenced, Ulta removed the vegan descriptions from the products at issue.  (*Id.*, ¶ 22.)

In the complaint, plaintiff Hogan, an Illinois resident alleges that she is a vegan who logged on to defendant's online website in February 2020 to shop for cruelty free and vegan mascara.  (NYSCEF 87, SAC ¶¶ 13, 30.)  She purchased Smashbox's "Super Fan Mascara" relying upon defendant's advertisements and disclosures that the product was vegan, but it in fact contained Carmine.  (*Id.*, ¶ 31.)  At her deposition, she

**651986/2020   HOGAN, SARAH vs. ULTA BEAUTY, INC.**
**Motion No.  009**

**Page 3 of 17**

3 of 17

[* 3]

testified she usually tries to buy only vegan cosmetics. (NYSCEF 93, Hogan Dep. Tr. 17:18-19). When shopping, she looks for the vegan symbol and assumes the product is not vegan if she does not see one. (*Id.*, 42:5:11.) She could not recall a specific instance of having seen any vegan symbol in connection with an online or in-store purchase of an Ulta product. (*Id.*, 31:8-34:17.) She does not adhere to a strictly vegan diet or consistently screen for vegan ingredients in cleaning products or at nail salons. (*Id.*, 35:10-12; 38:7-18; 39:1-8; 47:16-23.) As it turns out, the mascara Hogan bought does not contain carmine. (NYSCEF 118, product packaging.)

Ramirez, a California resident, is a consumer who looks for cosmetics, that are advertised as cruelty free and vegan. (NYSCEF 87, SAC ¶¶ 14, 34.) She alleges that in 2019 she began shopping for vegan cosmetics in one of defendant's retail stores in Riverside, California. *(Id.* ¶ 35.) In reliance on defendant's in-store shelf advertisements claiming the products were vegan, she bought Smashbox's "Super Fan Mascara," and NYX Professional Makeup "Sweet Cheeks Creamy Powder Blush", which contained carmine. (*Id.* ¶¶ 34-39.) At her deposition, she testified that she remembered that the mascara was identified as vegan but did not remember anything else about the advertising for it. (NYSCEF 91, Ramirez Dep. Tr. 59:12-23.) She did not remember when, where or how she bought the blush, or whether it was in-store or online. (*Id.*, 81:7-83:1.)

Plaintiff Shelp, a New York resident, alleges that she shopped for vegan products at an Ulta retail store located in Rochester, NY, as well as online, and relied on Ulta's in-store and online descriptions when she purchased a number of cosmetics products including Ulta's Luxe Lipstick, NYX Professional Makeup Sweet Cheeks, and Smashbox

**651986/2020 HOGAN, SARAH vs. ULTA BEAUTY, INC.**
**Motion No. 009**

**Page 4 of 17**

4 of 17

Super Fan Mascara Plaintiff. (*Id.*, ¶¶ 16, 42–43.) At her deposition, she testified that she does not personally use vegan cosmetics but will buy them for her daughter and others. (NYSCEF 92, Shelp Dep. Tr. 18:19-20; 20:3-9; 34:23-35:24; 46:14-47:14; 57:15-60:1.) She follows a vegan diet as far as not eating meat or fish, but makes an exception for high-quality dairy products. (*Id.*, 49:19-50:21.) She could not remember whether she purchased any of the products in-store or online (*id.*, 66:12-67:7; 70:24-71:2), but later recalled that she bought the mascara in-store. (*Id.*, 74:19-75:5.) She did not read the ingredients on any of the labels before making her purchases but relied on the vegan symbols on the shelf displays. (*Id.* 75:19-77:9).

The three proposed class representatives all sue under the consumer protection acts of the respective states. Hogan asserts a claim under the Illinois Consumer Fraud and Deceptive Practices Act (ICFA), 815 ILCS 502/1 which prohibits "unfair methods of competition and unfair or deceptive acts or practices . . . with intent that others rely upon" such acts or practices "in the conduct of any trade or commerce". (NYSCEF 87, SAC ¶¶ 62–74.) Ramirez proceeds under California's False Advertising Law (FAL), which prohibits the advertisement of "any statement" connected with the disposition of any real or personal property or services "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading" and the dissemination of any such "statement . . . with the intent not to sell that . . property . . . so advertised at the price stated therein, or as so advertised" (Cal. Bus. & Prof. Code) § 17500, as well as the "Unlawful Prong" and "Fraudulent Prong" of the California UCL which prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act" prohibited

**651986/2020   HOGAN, SARAH vs. ULTA BEAUTY, INC.**
**Motion No.  009**

**Page 5 of 17**

5 of 17

by § 17500 (Cal. Bus. & Prof. Code § 17200). (*Id.* ¶¶ 85–105.)  Shelp invokes New York General Business Law § 349 which prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York (GBL § 349[a]) and also under GBL § 350, which prohibits "false advertising in the conduct of any business, trade or commerce or in the furnishing of any service." (*Id.* ¶¶ 107-119.)

## STANDARD OF REVIEW

CPLR 902 provides that an action "may be maintained as a class action only if the court finds that the prerequisites under section 901 [of the CPLR] have been satisfied." CPLR 901(a) states:

> "[O]ne or more members of a class may sue . . . as representative parties on behalf of all if:
>
> 1. the class is so numerous that joinder of all members, whether otherwise
>     required or permitted, is impracticable;
>
> 2. there are questions of law or fact common to the class which predominate over any questions affecting only individual members;
>
> 3. the claims or defenses of the representative parties are typical of the claims or defenses of the class;
>
> 4. the representative parties will fairly and adequately protect the interests of the class; and
>
> 5. a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Once the court has determined that these prerequisites -- "commonly referred to as the requirements of numerosity, commonality, typicality, adequacy of representation and superiority" (*City of New York v Maul*, 14 NY3d 499, 508 [2010]) -- have been met, "the court, in deciding whether to grant class action certification should then consider

**651986/2020   HOGAN, SARAH vs. ULTA BEAUTY, INC.**
**Motion No.  009**

**Page 6 of 17**

6 of 17

the additional factors promulgated by CPLR 902 such as the interest of individual class members in maintaining separate actions and the feasibility thereof; the existence of pending litigation regarding the same controversy; the desirability of the proposed class forum; and the difficulties likely to be encountered in managing the class action." (*Pludeman v N. Leasing Sys., Inc.*, 74 AD3d 420, 421-422 [1st Dept 2010] [citation omitted].)  However, the determination of whether class status should be granted is within the sound discretion of the court, which must be mindful that the statute is to be liberally construed.  (*Kudinov v Kel-Tech Const. Inc.*, 65 AD3d 481, 481 [1st Dept 2009].) Any error should be construed in favor of certification.  (*Pruitt v Rockefeller Ctr. Properties, Inc.*, 167 AD2d 14, 21 [1st Dept 1991.)  The court's inquiry into the merits of the plaintiffs' claims should be limited to assessing whether that they are "neither spurious nor a sham."  (*Bloom v Cunard Line*, 76 AD2d 237, 240 [1st Dept. 1980].)

The proponent of an application for class certification has the burden of establishing with evidence in admissible form that the requirements of CPLR 901 and 902 have been met.  (*Mid Island LP v Hess Corp.*, 184 AD3d 439, 440 [1st Dept 2020].) Conclusory allegations which rest upon nothing but the pleadings and the affirmations of counsel will not meet that burden.  (*Chimenti v American Express Co.*, 97 AD2d 351, 352 [1st Dept], *appeal dismissed*, 61 NY2d 669 [1983].)  Sworn party testimony and corroborating documentation may suffice.  (S*ee Dabrowski v Abax Inc.*, 84 AD3d 633, 634 [1st Dept 2011].)

**651986/2020   HOGAN, SARAH vs. ULTA BEAUTY, INC.**
**Motion No.  009**

**Page 7 of 17**

## DISCUSSION

The motion for class certification is denied due to issues relating the factors of commonality and typicality. However, all of the factors will be discussed below for the purpose of completeness and any future proceedings.

### Numerosity

"There is no 'mechanical test' to determine whether the first requirement -- numerosity -- has been met." (*Friar v Vanguard Holding Corp.*, 78 AD2d 83, 96 [2d Dept 1980] [quotation omitted].) "Each case depends upon the particular circumstances surrounding the proposed . . . and the court should consider the reasonable inferences and common-sense assumptions from the facts before it." (*Id.* [internal citations omitted].) A class of under 25 members will likely not merit certification whereas a class of over 40 most likely will, with other factors to be considered where the number falls in between. (S*ee Globe Surgical Supply v GEICO Ins. Co.*, 59 AD3d 129, 138 [2d Dept 2008].) However, "the legislature contemplated a class involving as few as eighteen members . . . where the members would have difficulty communicating with each other" due to factors such as distance, cost, language, income, education and lack of information. (*Borden v 400 E. 55th St. Assocs., L.P.*, 24 NY3d 382, 399 [2014].)

Plaintiffs assert that the three proposed classes each number in the thousands because Ulta shipped over 38,000 of its purportedly vegan products to New York residents, more than 33,000 to Illinois residents, and over 108,000 to California residents. (NYSCEF 85, Affirmation of Eugene Y. Turin ¶ 6.) Ulta does not dispute these sales numbers, which it provided in discovery, but argues that they are irrelevant without a showing of how many of the consumers actually relied on the company's

[* 8]

representations and purchased the cosmetics because they were vegan. The court rejects this argument. As preliminary matter, none of the state consumer statutes at issue require proof of reliance. (*Hasemann v Gerber Prod. Co.*, 331 FRD 239, 257 [ED NY 2019] ["Neither [NY GBL] section 349 nor section 350 contains a reliance requirement, and a proper claim under section 349 or 350 does not require proof that a consumer actually relied on the misrepresentation"] citing S*tutman v Chem. Bank*, 95 NY2d 24, 29, [2000]; *Connick v Suzuki Motor Co.*, 174 Ill 2d 482, 501 [1996] ["[p]laintiff's reliance is not an element of statutory consumer fraud" under the ICFA"]; *In re KIND LLC "Healthy & All Natural" Litig.*, 627 F Supp 3d 269, 281 [SD NY 2022] [citation omitted] ["Relief under the UCL, FAL, and CLRA is available without individualized proof of 'reliance and injury, so long as the named plaintiffs demonstrate injury and causation'"].)

Additionally, "reasonable inferences and common sense" dictate that the number of vegan consumers who purchased Ulta's products far exceeded minimum permissible class size. Ulta's decision to label and market its online and in-store products as vegan was necessarily a deliberate one, and the company's vice president of merchandise operations testified that one of the "five pillars" of its "Conscious Beauty Initiative" was vegan because of the growing consumer interest in vegan products. (NYSCEF 89, Deposition Jennifer Westerlund tr at 105:23-106:10.) It would defy reason to conclude Ulta's efforts were directed at attracting only a few dozen or so new customers.

**Commonality**

As with numerosity, "commonality cannot be determined by any 'mechanical test.'" (*Maul*, 14 NY3d at 514.) The factor requires that questions of law or fact

**651986/2020   HOGAN, SARAH vs. ULTA BEAUTY, INC.**
Motion No.  009

**Page 9 of 17**

common to the class outnumber any questions affecting individual class members. (*Pludeman*, 74 AD3d 420, 422.) This predominance does not mandate complete identity or unanimity among class members. (*Id.*) Accordingly, it is not fatal to class action status that questions pertaining to individual class members may remain after resolution of common questions. (*Maul*, 14 NY3d 499, 514.) "[C]ommonality of the claims will be found to predominate, even though the putative class members have 'different levels of damages.'" (*Weinstein v Jenny Craig Operations, Inc.*, 138 AD3d 546, 547 [1st Dept 2016] [citation omitted.) Thus, "commonality is not merely an inquiry into whether common issues outnumber individual issues but rather whether the use of a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." (*Pludeman*, 74 AD3d at 423 [internal quotation marks and citations omitted].)

Except as discussed below, common questions would predominate in this case because a finding that each of the three state statutes was violated turn upon whether under an objective standard, a reasonable consumer would have been misled by Ulta's uniform marketing and packaging representations that the products were vegan. The application of this the objective test would render this action "ideal for class certification" because the court would not be required "to investigate class members' individual interactions with the product." (*Tait v B SH Home Appliances Corp.*, 2012 WL 6699247, *12 [CD Cal 2012] [internal quotation marks and citations omitted], *lv denied*, 2013 WL 1395690 [9th Cir 2013], *cert denied*, 571 US 1196 [2014].) "Fraud claims based on uniform misrepresentations to all members of a class are appropriate subjects for class certification because, unlike fraud claims in which there are material variations in the

651986/2020   HOGAN, SARAH vs. ULTA BEAUTY, INC.                    Page 10 of 17
Motion No.   009

10 of 17

misrepresentations made to each class member, uniform misrepresentations create no need for a series of mini-trials." (*In re Kind Litig.*, 337 FRD 598, 610 [SD NY 2021] [internal quotation marks and citations omitted].)

Ulta disputes that the requirement of commonality has been met on the ground that plaintiffs cannot show that all consumers saw the same product descriptions, or that all of the purchasers relied on them. However, it is sufficient that the consumers were all potentially *exposed* to the company's representations that the products were vegan or free of animal derived ingredients. (S*ee Hasemann*, 331 FRD at 262). Furthermore, as noted above, reliance is not required under any of the consumer statutes.

Ulta additionally argues that damages are not common to the class, and, in essence, that the class has suffered no injury at all. This objection has more, and ultimately fatal, force. Plaintiffs two theories of damages are that (1) consumers paid more, or a "price premium" for products label "vegan" that were not actually vegan, and (2) consumers lost money that should be refunded because they received products that were unusable and thus worthless to them. With respect to the price premium theory, Ulta's expert concluded that the company did not charge a higher price for vegan products that it did for non-vegan products. (NYSCEF 114, Hitt Report, Sections VI-VII). The expert further concluded that there was no common method that could reliably establish a vegan-labeled price premium. *(Id.,* Section VIII).

Plaintiffs do not challenge the defendant's expert's analysis of Ulta's pricing data. Rather, they fault the report's alleged failure to evaluate whether actual consumer purchasing decisions were affected by the company's vegan labeling. Specifically, without offering any expert testimony of their own, they contend that defendant's expert

**651986/2020   HOGAN, SARAH vs. ULTA BEAUTY, INC.**
**Motion No.  009**

Page 11 of 17

11 of 17

failed to account for the possibility that even though defendant maintained the same price for the cosmetics at issue after it removed the vegan labeling, there may have been a decrease in consumers willing to purchase the cosmetics because they were no longer marked vegan.

At his deposition, however, defendant's expert testified in response to this question that "the prices do account for whatever happened in the marketplace." (NYSCEF 131, Deposition of Lorin M. Hitt, Ph.D 11:24-12:9). Plaintiffs again have not offered expert testimony to rebut that conclusion, resting instead on assertions in their briefs. Nevertheless, they have submitted the report of an expert (NYSCEF 90, Expert Report of Thomas J. Maronick, DBA, JD [the Maronick Report]), which proposes to conduct a brief survey to assess the amount consumers would have been willing to pay if the Ulta products were not vegan as advertised. Defendant has countered with a rebuttal report from its expert (NYSCEF 115, Rebuttal Expert Report of Lorin M. Hitt, Ph.D [the Hitt Rebuttal Report], which identifies numerous serious deficiencies in the methodology of the Maronick Report.

Plaintiffs have not addressed or even mentioned the objections raised by the Hitt Rebuttal Report in their reply papers. Among the greatest difficulties with plaintiffs' proposed approach is that attempting to establish a price premium by determining what the consumers in question would be willing to pay for non-vegan products runs contrary to the central premise of the complaint. Specifically, plaintiffs assert that they and the members of the proposed class are conscientious vegans whose moral objections generally forbid them to use animal-derived products. If that is the case, then determining a price premium based on what they would have paid for a product had

651986/2020   HOGAN, SARAH vs. ULTA BEAUTY, INC.                                    Page 12 of 17
Motion No.  009

12 of 17

they known it was non-vegan would be a senseless exercise. (See Id. ¶ 40). If they knew it was not vegan, they would not have bought it at any price.

Plaintiffs are essentially demanding a full refund for products they now regret having purchased and used after discovering the true ingredients. Other than their dismay that the cosmetics contained unwanted insect-derived coloring, they do not allege that the products did not serve their intended purpose. Absent proof that the products' prices were actually inflated or that the products adversely affected plaintiffs' health, they may not recover. (*See Small v Lorillard Tobacco Co.*, 94 NY2d 43, 55-56 [1999].) The deception and mislabeling alone cannot suffice to be the injury. (*Id.* at 55-56.)

### Typicality

A plaintiff's claim fulfills the requirement of typicality where it "derives from the same practice or course of conduct that gave rise to the remaining claims of other class members and is based upon the same legal theory." (*Friar*, 78 AD2d at 99.) "Typicality does not require identity of issues and the typicality requirement is met even if the claims asserted by class members differ from those asserted by other class members." (*Pludeman*, 74 AD3d at 423). Indeed, the requirement is satisfied "even if the class representative cannot show on an individual basis "reliance" as to General Business Law § 349 claims and resulting injury." (*Weinberg v Hertz Corp.*, 116 AD2d 1, 7 [1st Dept 1986] ["Defendant's assertion that plaintiff Weinberg's course of conduct is not typical of the class that he purports to represent because (1) he does not have an individual contract claim, (2) he cannot show on an individual basis reliance as to General Business Law § 349 claims and resulting injury, and (3) as a sophisticated

651986/2020   HOGAN, SARAH vs. ULTA BEAUTY, INC.                                    Page 13 of 17
Motion No. 009

13 of 17

attorney he could not show a lack of meaningful choice, is no basis for denying class action status, even if true" [internal quotation marks omitted], *aff'd* 69 NY2d 979 ][1987].) Here, except as noted below with respect to plaintiff Hogan, the claims of the proposed class members are typical of the classes they seek to represent because they all arise from purchases of cosmetics identified as vegan despite containing carmine.

Ulta contends that plaintiffs' claims are not typical of the classes they seek to represent for several reasons. First, Ulta contends that they are not actually members of their respective classes. Second, it asserts that plaintiffs could not say whether they saw the alleged misrepresentations. Third, Ulta argues that plaintiffs are not similarly motivated to purchase vegan products.

In arguing that the plaintiffs would not belong to the classes they represent, defendant argues that Ramirez did not make her purchases online; that Shelp does not know whether she bought any product online and buys products regardless of whether they are vegan; and that Hogan only purchased a product that does not contain carmine. As to Ramirez and Shelp, the argument would fail because it is sufficient for the purpose of establishing typicality that they were exposed to defendant's representations, whether online or in-store. Plaintiffs have narrowed the class definition to include only online purchasers for the purpose of uniformity and manageability of the class, and because Ulta is unable to identify all in-store buyers. Defendant would not be prejudiced by the revised definition because it "is narrower than and encompassed within the complaint's broader definition" of those who purchased misidentified Ulta products. (S*ee Andrews v Plains All Am. Pipeline*, LP, 2019 WL 6647928, *7 (CD Cal 2019.)

**651986/2020 HOGAN, SARAH vs. ULTA BEAUTY, INC.**
**Motion No. 009**

**Page 14 of 17**

14 of 17

It would also be immaterial that Shelp does not purchase exclusively vegan products. There is no requirement that plaintiffs be consistent in their vegan principles or, for that matter, adhere to any particular vegan purchasing regime at all. Rather, the predominating issue is whether plaintiffs purchased products listing carmine as an ingredient which were mislabeled as "vegan". This would also dispose of Ulta's point regarding plaintiffs' differing motivations.

However, even had plaintiffs established an injury arising from their purchase of products containing carmine, Hogan would be disqualified as a class representative because the product she bought did not contain it. She purchased a product identified as vegan that *was* vegan. That it was mislabeled as containing carmine is irrelevant. Plaintiffs do not claim that they were injured by paying for carmine but not receiving it. Their theory is that they purchased products labeled as vegan which *did* contain carmine. Because Hogan's product did not contain the contested ingredient, she suffered no injury. (See *Brown v Coty, Inc.*, 2024 WL 894965, *4 [SD NY 2024]) (failure to submit sufficient evidence that cosmetics actually contained harmful per-and-polyfluoroalkyl substances fatal to claim of injury.)

Plaintiffs counter that Hogan's claim would nevertheless "directly track[]" their proposed Illinois class definition, which requires only that the product in question have "listed" carmine as an ingredient. In the context of plaintiffs' overall theory, however, the word "listed' must be read as meaning that the product itself actually "contained" carmine, rather than the overly literal interpretation that the word "carmine" appeared somewhere in the ingredients list. Plaintiffs' assertion that "Hogan purchased from its online store a Product that listed carmine as an ingredient and was mislabeled as

**651986/2020   HOGAN, SARAH vs. ULTA BEAUTY, INC.**
**Motion No.  009**

Page 15 of 17

vegan" is simply incorrect. Rather, she purchased a product correctly labeled as a vegan product which was mislabelled as containing carmine.

Plaintiffs also argue that whether Hogan or other class members did not suffer any injuries by purchasing mislabeled products could await summary judgment, and that "whether consumers were harmed when they purchased a mislabeled product that ultimately did not contain carmine is a common question that can be resolved across the Class". While it is true that a consumer who received vegan products mislabeled as containing carmine could be weeded out on a classwide basis, the problem is that Hogan could be weeded out right now. The only class she could represent would be a class of vegans who were not harmed by defendant's mislabeling practices. Accordingly, the Illinois class could not be certified with Hogan as its representative.

Finally, Ulta's claim that the plaintiffs did not testify to seeing the misrepresentations is inaccurate. As discussed above, while none of them could recall the details of a specific purchase, all of them stated that their process of selection involved looking for a vegan symbol or description.

### Adequacy/Superiority/ CPLR 902 Factors

Ulta's contentions regarding the adequacy of the individual plaintiffs relies entirely on their argument that they do not belong to their respective classes, which was rejected above except as to Hogan. Similarly, its argument that a class action is not superior mirrors their argument that the factor of commonality (except as respect to injury) has not been satisfied. Finally, its arguments under CPLR 902(1) and (5) are duplicative of its arguments addressing commonality and typicality.

Accordingly, for the foregoing reasons, it is hereby

**651986/2020   HOGAN, SARAH vs. ULTA BEAUTY, INC.**
**Motion No.  009**

**Page 16 of 17**

16 of 17

[* 16]

ORDERED, that plaintiffs' motion for class certification is denied.

__4/7/2024__
DATE

2024040721A955AMASLEY569BD5C5A3EA40289C24B307F5F824C5

ANDREA MASLEY, J.S.C.

CHECK ONE:          [X] CASE DISPOSED          [ ] NON-FINAL DISPOSITION

                    [ ] GRANTED    [x] DENIED    [ ] GRANTED IN PART          [ ] OTHER

APPLICATION:        [ ] SETTLE ORDER            [ ] SUBMIT ORDER

CHECK IF APPROPRIATE:  [ ] INCLUDES TRANSFER/REASSIGN    [ ] FIDUCIARY APPOINTMENT    [ ] REFERENCE

651986/2020   HOGAN, SARAH vs. ULTA BEAUTY, INC.          Page 17 of 17
Motion No.  009

17 of 17

[* 17]